**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-CV-00691-WEM-KLM

**REMBRANDT TECHNOLOGIES, LP, et al**
**Plaintiffs,**

**v.**

**COMCAST CORPORATION, et al,**
**Defendants,**

**CABLE TELEVISION LABORATORIES, INC.**
**Movant**

---

**CABLE TELEVISION LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF ITS AMENDED MOTION TO QUASH REMBRANDT TECHNOLOGIES, LP'S SUBPOENA OR ALTERNATIVELY FOR A PROTECTIVE ORDER**

---

TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................3

I. The Underlying Litigation ....................3

A. Introduction ....................3

B. Procedural Posture ....................3

C. CableLabs ....................4

II. Rembrandt's Previous Subpoenas to CableLabs And Its Employees ....................5

A. Rembrandt Subpoenas to CableLabs ....................5

B. Rembrandt's Subpoenas to CableLabs' Former and Current Employees ....................6

III. Rembrandt's April 1, 2009 Subpoena to CableLabs ....................7

A. The April 1, 2009 Subpoena ....................7

B. CableLabs' Good Faith Attempts to Meet-and-Confer with Rembrandt ....................7

ARGUMENT ....................9

I. Rembrandt's Subpoena Unduly Burdens Non-Party CableLabs And Should Be Quashed ....................9

A. Rembrandt Should Not Be Permitted to Re-Depose Dorothy Raymond (Topics 2, 3, 9, 10 and 11) ....................9

B. Topics Which Are More Appropriately Directed to the Parties (Topics 6, 8a, 8c, 18, 22 and 23) ....................13

C. Topics for Which CableLabs Does Not Have a Knowledgeable Witness (Topic 4) ....................14

D. Topics about which Rembrandt Has No Personal Knowledge (Topic 15) ....................14

E. Topics for Which Rembrandt Has Received Extensive Document Discovery (Topics 1, 5, 7, 8b, 12–14, 16–17 and 19–21) ....................15

II. Alternatively, the Court Should Modify the Subpoena and Limit Rembrandt to Seven Hours of Deposition Testimony ....................15

CONCLUSION....................18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Berning v. UAW Local 2209*,
No. 1:06-00087, 2007 WL 1385367 (N.D. Ind. May 4, 2007) ..... 15

*Haworth, Inc. v. Herman Miller, Inc.*,
998 F.2d 975 (Fed. Cir. 1993) ..... 13

*In re Agent Orange Prod. Liab. Litig.*,
517 F.3d 76 (2d Cir. 2008) ..... 17

*Linder v. National Security Agency*,
94 F.3d 693 (D.C. Cir. 1996) ..... 9

*Novartis Pharms. Corp. v. Abbott Labs.*,
203 F.R.D. 159 (D. Del. 2001) ..... 11

*Pro-Football, Inc. v. Harjo*,
No. 99-1385, 2006 WL 2092637 (D.D.C. Jul. 26, 2006) ..... 15

*Seewald v. IIS Intelligent Info. Sys.*,
No. 93-4252, 1998 U.S. Dist. LEXIS 7458 (E.D.N.Y. Apr. 23, 1998) ..... 18

**RULES**

Fed. R. Civ. P. 26(b)(2)(A) ..... 17

Fed. R. Civ. P. 45 ..... 1

Fed. R. Civ. P. 45(c)(3)(A)(iv) ..... 9

Rule 45 and 30, Federal Rules of Civil Procedure ..... 1

Rule 30 ..... 17

Rule 30(b)(6) ..... passim

Rule 45(a)(2) and Rule 45(c)(A)(ii) ..... 1

Rule 45(c)(1) ..... 9

Rule 45 and Rule 30(b)(6) ..... 8, 11

Cable Television Laboratories, Inc. ("CableLabs") submits this memorandum in support of its amended motion pursuant to Rule 45 and 30, Federal Rules of Civil Procedure, for an order quashing Rembrandt Technologies, LP's ("Rembrandt") April 1, 2009 Subpoena (the "April 1st Subpoena"), or alternatively for a protective order modifying the subpoena.

**PRELIMINARY STATEMENT**

On March 27, 2009, CableLabs filed a motion to quash the subpoena served by Rembrandt on February 26, 2009 (the "February 26th Subpoena"). The location specified by Rembrandt on the February 26th Subpoena was Wilmington, Delaware; therefore, that Subpoena required a deposition of CableLabs in Delaware. The February 26th Subpoena therefore violated Rule 45(a)(2) and Rule 45(c)(A)(ii) and was invalid on its face. Cooperation from CableLabs as to the location of the deposition could not have overcome the invalidity of the February 26th Subpoena. Therefore, CableLabs included the location as a basis for its prior motion to quash.

On April 1, 2009 Rembrandt served a new Subpoena that superseded the February 26th Subpoena, changing only the deposition location to a Colorado address. With the exception of the noticed location for the deposition and document production, the April 1, 2009 Subpoena is identical in all respects to the February 26th Subpoena. CableLabs is therefore filing this amended motion to quash the April 1st Subpoena.

Rembrandt's April 1st Subpoena (Ex. 1) is the latest in Rembrandt's blatant disregard of its Fed. R. Civ. P. 45 obligation to take reasonable steps to avoid imposing undue burden on CableLabs. Despite the fact that CableLabs is not a party to the underlying litigation, Rembrandt has already served CableLabs with five subpoenas and has served three additional subpoenas on CableLabs former and current employees. In response to these subpoenas, CableLabs produced

more than 180,000 pages of documents and provided its former General Counsel and two current employees for three days of deposition testimony.

Rembrandt's April 1st Subpoena seeks deposition testimony on 23 topics (with more than 100 subparts), and highlights Rembrandt's incorrect belief that it can seek unlimited, burdensome discovery from non-party CableLabs. The April 1st Subpoena should be quashed because it imposes an undue burden on CableLabs. Alternatively, if the Court determines that Rembrandt is entitled to additional depositions of CableLabs, the topics should be limited and narrowed, and Rembrandt should be limited to no more than seven total hours of corporate testimony.

With this Motion, CableLabs respectfully requests that the Court quash the subpoena in its entirety because it is unduly burdensome, because the topics are duplicative, and because Rembrandt has not made any meaningful attempt to minimize the burden on nonparty CableLabs. Specifically, CableLabs maintains that topics 2, 3, 4, 6, 8a, 8c, 9, 10, 11, 18, 22, and 23 are duplicative and inappropriate, and no modification or limitation can correct these fatal flaws. Therefore those topics must be eliminated from the subpoena. The remaining topics (topics 1, 5, 7, 8b, 12, 13, 14, 15, 16, 19, 20, and 21) are also overly burdensome, but if the subpoena is not quashed in its entirety, CableLabs nevertheless requests that the Court narrow these topics to a reasonable level of detail. Finally, if the Court does not quash the subpoena in its entirety, CableLabs respectfully requests that the subpoena be limited to no more than seven hours in duration.

# STATEMENT OF FACTS

## I. The Underlying Litigation

### A. Introduction

Rembrandt is an investment fund that purchases patents and attempts to enforce them in order to generate returns for its investors. Such companies are known as non-practicing entities or "patent trolls." From 2005 to 2006, Rembrandt filed fourteen suits in three District Courts against six cable system operators (for example Time Warner Cable or Comcast) that provide both cable and Internet services to consumers (collectively "Multiple System Operators" or "MSOs") in an attempt to enforce nine patents relating to telephone modem technology Rembrandt purchased from Paradyne, an AT&T spinoff. In 2008, seven manufacturers of equipment for the provision of Internet services over cable (the "Equipment Vendors") filed a declaratory judgment action alleging that eight of the patents asserted against the MSOs were invalid and not infringed.

### B. Procedural Posture

The underlying action is a multidistrict litigation that consolidates the fourteen patent infringement lawsuits filed by Rembrandt and the Equipment Vendors' declaratory judgment action in the District of Delaware. Trial is set for January 2010 for Rembrandt's patent infringement claims, the Equipment Vendors declaratory judgment claims and the parties' counterclaims regarding eight of the nine patents originally asserted by Rembrandt. Fact discovery closes on May 8, 2009 and expert discovery closes on July 21, 2009.

**C. CableLabs**

CableLabs, which is headquartered in Louisville, Colorado, is a non-party nonprofit research and development consortium dedicated to pursuing new cable television technologies and defining interfaces between cable networks and cable devices connected to the network. CableLabs benefits the cable television industry by enabling interoperability among different cable devices. CableLabs also conducts audit testing of cable devices built to its specifications.

One such specification is the Data Over Cable Service Interface Specification ("DOCSIS"). DOCSIS defines interface specifications for providing high-speed data transmission over cable television networks. The DOCSIS specification was written over ten years ago.

To facilitate the efficient licensing of patented technology essential to create and implement DOCSIS, CableLabs developed a royalty free patent pool. Companies contributing essential technology to the DOCSIS standardization effort signed an agreement, the DOCSIS License Agreement, which grants to each signatory a non-exclusive, royalty-free cross-license to any intellectual property rights in the pool that are essential to compliance with DOCSIS. In exchange for this license grant, DOCSIS pool members grant to the other pool members non-exclusive, royalty-free licenses to their own intellectual property that is essential to comply with DOCSIS.

## II. <u>Rembrandt's Previous Subpoenas to CableLabs And Its Employees</u>

### A. Rembrandt Subpoenas to CableLabs

Rembrandt served four separate subpoenas on non-party CableLabs from December 2006 through August 2008 propounding 112 document requests and seeking deposition testimony on 69 topics (many with numerous subparts):

- December 14, 2006 subpoena *duces tecum* and *ad testificandum* propounding 19 requests for the production of documents and things and seeking deposition testimony on 19 topics. (Ex. 2).
- July 17, 2008 subpoena *duces tecum* and *ad testificandum* propounding 23 requests for the production of documents and things and seeking deposition testimony on 19 topics. (Ex. 3).
- July 29, 2008 subpoena *duces tecum* propounding 38 requests for the production of documents and things. (Ex. 4).
- August 19, 2008 subpoena *duces tecum* and *ad testificandum* propounding 32 requests for the production of documents and things and seeking deposition testimony on 31 topics. (Ex. 5).

CableLabs objected to these subpoenas as duplicative, overbroad and unduly burdensome, and requested that Rembrandt consolidate and narrow the subpoenas to reduce that burden. On September 22, 2008, Rembrandt provided CableLabs with a fifth "consolidated" subpoena *duces tecum* containing 51 document requests that Rembrandt agreed would supercede all subpoenas previously served on CableLabs. (Ex. 6). In the same letter, Rembrandt stated that it "intends to re-notice a Rule 30(b)(6) deposition of CableLabs" but did not provide a date when

it intended to do so or any indication of the topics on which it would seek deposition testimony. In compliance with the September 22, 2008 consolidated subpoena, CableLabs has produced to Rembrandt more than 180,000 pages of documents.

**B. Rembrandt's Subpoenas to CableLabs' Former and Current Employees**

In December 2008, Rembrandt served three subpoenas *ad testificandum* to Dorothy Raymond (CableLabs' former general counsel and current outside counsel), William Kostka (a current employee), and Carmela Stuart (also a current employee). In compliance with these individual subpoenas, CableLabs, at its expense, provided each of these individuals for deposition, and engaged outside counsel to defend these depositions.

On January 30, 2009, Rembrandt deposed Dorothy Raymond, CableLabs' former General Counsel and current outside counsel, for more than eight hours. (*See* Docket No. 5, Ex. 7, Raymond Dep. Tr.). Ms. Raymond had worked as a lawyer at or for CableLabs for 15 years, including during the development of the DOCSIS specification, the DOCSIS Patent Pool, and licensing arrangements. Ms. Raymond is the most knowledgeable person regarding CableLabs' licensing, the DOCSIS Patent Pool, and the DOCSIS License Agreement.

On March 10, 2009, Rembrandt deposed Carmela Stuart, CableLabs' Director of Test Development for Broadband Network Services, for more than four and a half hours on various topics including testing and certification of DOCSIS products.

On March 12, 2009, William Kostka, one of CableLabs' Principal Architects, was deposed by Rembrandt for nearly six hours on various topics including testing, and certification of DOCSIS products, and development of DOCSIS.

## III. Rembrandt's April 1, 2009 Subpoena to CableLabs

### A. The April 1, 2009 Subpoena

The April 1, 2009 Subpoena seeks a deposition of CableLabs pursuant to Fed. R. Civ. P. 30(b)(6) on 23 topics with more than 100 subparts. (Ex. 1). The topics include:

- All communications between CableLabs and the defendants and previous owners of the patents-in-suit (Topics 1 and 4).
- CableLabs' licensing practices (Topics 2 and 3)
- The DOCSIS patent pool and license agreement (Topics 9-11)
- Fees paid by each MSO defendant (Topic 5)
- Costs associated with developing and implementing DOCSIS (Topics 6-8)
- Testing and certification of cable modems (Topics 13-15)
- The development of the DOCSIS specification (Topics 12, 16, 19, 20 and 21)
- The functionality of the cable modems developed and manufactured by the Equipment Vendors (Topics 22 and 23)
- The configuration and operation of the MSOs' cable systems (Topic 18)
- CableLabs' organization and personnel (Topic 17)

The numerous and diverse deposition topics would require CableLabs to prepare at least five separate witnesses.

### B. CableLabs' Good Faith Attempts to Meet-and-Confer with Rembrandt

CableLabs has made several good faith efforts to meet-and-confer with Rembrandt to narrow the scope of the April 1st Subpoena. In a letter of March 2, 2009, CableLabs notified Rembrandt of the heavy burden the subpoena would cause. (Ex. 8).

On March 11, 2009, CableLabs further objected to the burden imposed by the subpoena. (Ex. 9). CableLabs objected to several topics because they were duplicative of the deposition testimony Rembrandt already obtained from CableLabs' witnesses during their individual depositions. Specifically CableLabs objected to Topics 2, 3, 9, 10 and 11 on the grounds that Rembrandt had already obtained extensive deposition testimony on each of these topics from Dorothy Raymond, who is the most knowledgeable person regarding CableLabs' licensing, the DOCSIS Patent Pool and the DOCSIS License Agreement. It would be quite expensive and burdensome for CableLabs to once again prepare Ms. Raymond and offer her testimony on those topics. Therefore, CableLabs offered to designate those portions of Ms. Raymond's prior deposition testimony relating to these topics to satisfy its Rule 45 and Rule 30(b)(6) obligations. CableLabs also objected to several topics that seek information that is outside of CableLabs' possession, custody or control and that is more easily and appropriately obtainable from parties in the action. Finally, CableLabs offered to provide a witness to testify generally on several topics.

After a March 11, 2009 meet-and-confer and a March 17, 2009 letter, Rembrandt refused to meaningfully narrow the scope of the Subpoena or accept CableLabs' offer to designate Ms. Raymond's testimony. (Ex. 10). On March 20, 2009, CableLabs again wrote to Rembrandt in an attempt to reach agreement on the scope of this subpoena. (Ex. 11). Indeed, after CableLabs filed the original motion to quash on March 27, 2009, CableLabs continued to confer with Rembrandt in further attempts to reach an agreement on the scope of the subpoena; however, the companies were unable to resolve their differences.

## ARGUMENT

### I. Rembrandt's Subpoena Unduly Burdens Non-Party CableLabs And Should Be Quashed

The April 1st Subpoena should be quashed or modified because it imposes an undue burden on non-party CableLabs. This is especially true in light of the extensive discovery Rembrandt has already imposed on non-party CableLabs. Rule 45(c)(1) requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." A district court is authorized to quash or modify a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). The district court has broad discretion in deciding a motion to quash. *Linder v. National Security Agency*, 94 F.3d 693, 695 (D.C. Cir. 1996).

The April 1st Subpoena would require CableLabs to review tens of thousands of pages of documents and identify and prepare several witnesses. As set forth below, Rembrandt has failed to take reasonable steps to avoid imposing an undue burden on CableLabs and the April 1st Subpoena should be quashed.

#### A. Rembrandt Should Not Be Permitted to Re-Depose Dorothy Raymond (Topics 2, 3, 9, 10 and 11)

Topics 2, 3, 9, 10 and 11 of the April 1st Subpoena, which relate to CableLabs' licensing, the DOCSIS patent pool and the DOCSIS License Agreement, should be quashed because Rembrandt has already obtained extensive discovery regarding these topics from Dorothy Raymond. Ms. Raymond, CableLabs' former General Counsel and current outside counsel, is the person most knowledgeable regarding each of these topics. At CableLabs' expense, Ms. Raymond testified at a deposition lasting more than eight hours. As set forth in the table below,

Ms Raymond testified extensively regarding each of these topics. Accordingly, these topics are duplicative of discovery Rembrandt has already obtained from non-party CableLabs and should be quashed.

| Topic No. | Topic | *See* Docket No. 5, Raymond Dep. Exhibit 7 |
|---|---|---|
| 2 | Your understanding of any patents granted, provided, or licensed to you relating to DOCSIS. | 63:11-72:13; 72:21-73:19 |
| 3 | Any of your licenses (whether as licensee or licensor) or agreements pertaining to intellectual property, including the licenses themselves and their terms. | 58:16-59:4; 61:2-17; 63:11-72:13; 72:21-75:10; 75:21-78:5; 95:2-98:3 |
| 9 | The DOCSIS Patent Pool, including: | 85:18-86:3; 90:1-13 |
| | a. its compilation; | 235:17-236:4 |
| | b. patents that are included; | 182:23-183:18 |
| | c. the decision to make it royalty-free; | 135:3-13; 136:21-137:3 |
| | d. alternatives to the royalty-free arrangement that were considered; | |
| | e. communications, whether to or from CableLabs, whether internal or external, whether in writing or oral, about the DOCSIS patent pool; | Exhs. 2, 6, 8 |
| | f. the coverage of the DOCSIS patent pool (e.g., whether it covers only that which is essential for DOCSIS, or whether it also covers the implementation of DOCSIS); | 103:17-105:19; 132:19-133:10; 228:10-21 |
| | g. representations made by CableLabs to CableLabs members, DOCSIS patent pool members, and other third parties about the DOCSIS patent pool; | 101:12-105:19; 205:19-23; Exh. 2, 8 |
| | h. how CableLabs maintains the DOCSIS patent pool (i.e., the compilation of additional patent rights for newer versions of DOCSIS or for newly discovered patents that are necessary for DOCSIS); | 231:12-232:6 |
| | i. the parties to the DOCSIS patent pool; and | 54:3-12; 208:18-211:1; 23:21-23 |
| | j. Communications regarding the DOCSIS Patent Pool between you and any persons who did not join or contribute intellectual property to the DOCSIS Patent Pool. | 201:13-203:7 |
| 10 | The DOCSIS License Agreement, including: | 76:14-17 |
| | a. the process of drafting the Agreement; | 16:24-17:21; 114:5-14; 147:1-151:7; 156:13-162:20; Exhs. 9, 10 |
| | b. the parties who drafted the Agreement; | 17:16-18:3; 114:5-14; 125:14-127:3 |
| | c. CableLabs' understanding of the meaning of the Agreement; | 84:13-15; 84:21-23; 101:12-105:19; 228:10-21 |
| | d. communications, whether to or from CableLabs, whether | 101:12-105:19; Exhs. 2, 6, |

| Topic No. | Topic | *See* Docket No. 5, Raymond Dep. Exhibit 7 |
|---|---|---|
| | internal or external, whether in writing or oral, about the meaning of the DOCSIS License Agreement, the circumstances surrounding its negotiation and adoption, and the vendor-authors and signatories of the DOCSIS License Agreement; | 8, 15, 22; 127:15-128:5; 195:19-196:8; 208:18-217:2; 218:13-219:6 |
| | e. any changes that have been made to the Agreement over time; | 163:1-14; 165:13-166:3; 231:7-232:6 |
| | f. the disclaimers that are included in the Agreement; and | 236:5-13 |
| | g. parties that have signed the Agreement. | 54:3-12; 208:18-211:1; 23:21-23; Exhs. 18-21 |
| 11 | The Instructions for DOCSIS License Agreement, including: | |
| | a. the process of drafting the Instructions; | 220:24-221:2 |
| | b. who drafted the Instructions; | 220:24-221:2 |
| | c. CableLabs' understanding of the Instructions; | |
| | d. communications, whether to or from Cablelabs, whether internal or external, whether in writing or oral, about the Instructions; | 220:4-20; 225:8-13; Exh. 23 |
| | e. changes to the Instructions over time; and | 221:4-8 |
| | f. distribution of the Instructions. | 221:12-23 |

Alternatively, the April 1st Subpoena should be modified to permit non-party CableLabs to designate these relevant portions of Ms. Raymond's testimony in satisfaction of its Rule 45 and Rule 30(b)(6) obligations with respect to these topics. Designating portions of an individual's testimony is appropriate where the individual already provided extensive testimony regarding the topics and is the person most knowledgeable regarding the topics. For example, in *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 162-63 (D. Del. 2001), the court denied a motion to compel a Rule 30(b)(6) deposition of a party as cumulative because the requesting party had already deposed deponent in an individual capacity and the deponent was the most knowledgeable person and would have been the Rule 30(b)(6) designee. The court held that "Abbott's offer to be bound by Dr. Norton's testimony satisfies Abbott's obligation under Rule

30(b)(6) to produce a witness . . . ." *Id.* at 163. Accordingly, CableLabs should be permitted to designate Ms. Raymond's testimony from her previous deposition.

Rembrandt's argument that it should be permitted to obtain a second deposition of Ms. Raymond because CableLabs did not inform it prior to Ms. Raymond's first deposition that Rembrandt would not be permitted to later ask duplicative questions in its then-unnoticed Rule 30(b)(6) deposition is nonsensical. To be clear, this situation is entirely of Rembrandt's own making. Despite mentioning in September 2008 that it planned to re-notice a rule 30(b)(6) deposition at some future date, Rembrandt failed to so until February 26, 2009—five months later, and a month after the deposition of Ms. Raymond took place on a date of their own choosing. At the time of Ms. Raymond's first deposition, CableLabs was unaware of the topics Rembrandt would include in its notice. Thus, CableLabs <u>could not have</u> objected at that time.

Rembrandt's argument that it did not have the opportunity to ask questions on all of the topics is contrary to fact and law. It is beyond dispute that Rembrandt asked Ms. Raymond pages upon pages of questions regarding the topics on which it now seeks the 30(b)(6) testimony of CableLabs. That Rembrandt did not exhaust every question it could have asked is irrelevant. Rembrandt had the opportunity to do so and cannot identify a single instance where CableLabs prevented them from asking Ms. Raymond questions on these topics. More importantly, Rembrandt was under an obligation to take reasonable steps to avoid imposing an undue burden on non-party CableLabs and should have been aware that if it was receiving deposition testimony on these topics it would not be permitted to obtain testimony on the same topics at a later date.

**B. Topics Which Are More Appropriately Directed to the Parties (Topics 6, 8a, 8c, 18, 22 and 23)**

Rembrandt should not be permitted to burden non-party CableLabs with topics regarding the functionality of the Equipment Vendors' products or the functionality of the MSOs' systems. As detailed above, CableLabs generally manages and directs the development of the DOCSIS specification. While CableLabs tests cable modems and other equipment to determine whether the equipment complies with aspects of the DOCSIS standard, it does so in a "black box" manner; that is, simple input and output tests are applied, but CableLabs has no insight into the specific internal implementation of the requirements. And, it is undisputed that CableLabs does not design, manufacture or modify any cable modems or other equipment in response to different versions of DOCSIS. Nor is CableLabs involved in designing or developing the MSOs' systems which use those cable modems and equipment.

While CableLabs may have some general knowledge on topics 6, 8a and 8c (costs of modifying the design of cable modems), 18 (functionality of the MSOs systems), and 22 and 23 (functionality of cable modems and CMTSs), these topics are more appropriately directed to the parties in this case: the Equipment Vendors such as Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., etc., who actually designed and developed the cable modems and cable modem termination systems (CMTSs), and the MSOs who designed their cable systems. These large corporations are all parties to the litigation, yet Rembrandt is seeking more deposition time from CableLabs than Rembrandt has sought from many of these parties. For example, based on the current deposition schedule, Rembrandt is only seeking three to four days of deposition testimony from each of the MSO parties. Rembrandt has not made any showing that non-party CableLabs has information that the parties would not have, or that Rembrandt has been unable to

obtain this information from the parties. Absent such a showing, Rembrandt should not be permitted to burden non-party CableLabs with preparing additional witnesses, which would likely be designated and prepared specifically for these topics. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming an order requiring litigant to seek discovery from opposing party before subpoenaing nonparty).

**C. Topics for Which CableLabs Does Not Have a Knowledgeable Witness (Topic 4)**

Topic 4 of the April 1st Subpoena seeks testimony on communications between CableLabs and several entities from whom Rembrandt purchased the patents-in-suit. CableLabs does not have anyone knowledgeable regarding any communications which are more than ten years old. To the extent that CableLabs has any documents regarding communications with these companies, it has already produced those documents within the 180,000 pages of documents already produced. The burden of requiring non-party CableLabs to search through its production and prepare a witness to testify from scratch regarding this topic—which would amount to nothing more than the witnesses restating what the documents say—outweighs any need Rembrandt may have for the information. Rembrandt can read through the documents just as easily as CableLabs.

**D. Topics about which Rembrandt Already Has Personal Knowledge (Topic 15)**

Topic 15 of the April 1st Subpoena is unduly burdensome because Rembrandt has first-hand knowledge of the "[t]ypical documentation produced or received by CableLabs while conducting . . . testing." Rembrandt had partnered with Turbocomm to enter into the CableLabs' DOCSIS patent pool in order to obtain a royalty-free license to the DOCSIS patent pool without, according to Rembrandt, incurring any obligation to contribute Rembrandt's patents-in-suit to the

pool. After joining the DOCSIS patent pool, Rembrandt and Turbocomm submitted modems to CableLabs for testing and (hopefully) DOCSIS certification. Accordingly, Rembrandt should be precluded from seeking testimony on this topic because it is already aware of the documentation CableLabs receives in anticipation of testing and produces as a result of testing. *See Berning v. UAW Local 2209*, No. 1:06-00087, 2007 WL 1385367, at *3 (N.D. Ind. May 4, 2007) (granting motion for protective order precluding plaintiff from deposing a nonparty on grounds, in part, that plaintiff already had the information she sought in her subpoena, making the information "seemingly duplicative, less convenient, more burdensome, and more expensive.")

### E. Topics for Which Rembrandt Has Received Extensive Document Discovery (Topics 1, 5, 7, 8b, 12–14, 16–17 and 19–21)

CableLabs has provided more than 180,000 pages of documents which provide the very information Rembrandt seeks in the remaining topics (1, 5, 7, 8b, 12–14, 16–17 and 19–21) of the April 1st Subpoena. Accordingly, non-party CableLabs should not be required to provide additional witnesses on these topics. *See Pro-Football, Inc. v. Harjo*, No. 99-1385, 2006 WL 2092637, *6-7 (D.D.C. Jul. 26, 2006) (denying permission to notice Rule 30(b)(6) depositions where proposed topics were duplicative of earlier document requests).

## II. Alternatively, the Court Should Modify the Subpoena and Limit Rembrandt to Seven Hours of Deposition Testimony

To the extent that the Court determines that Rembrandt is entitled to additional depositions of non-party CableLabs, the Court should modify the subpoena to limit the deposition testimony to Topics 1, 5, 7, 8b, 12–16 and 19–21 (as narrowed below), and further modify the subpoena to limit Rembrandt to a total of seven hours of deposition testimony.

- Topics 1 and 5: Topics 1 and 5 seek testimony regarding every communication and payment between CableLabs and each of the thirteen defendants over the past fifteen years. It is impossible for CableLabs to prepare a witness (or even several witnesses) concerning these topics regarding thousands of communications and hundreds of specific emails, letters, phone calls, and payments. Therefore, if the Court does not quash the subpoena in its entirety, it is reasonable for CableLabs to provide a witness(es) to testify only regarding the types of general types of communications that occur between CableLabs and the defendants and the types of membership fees, capital infusions and contributions that are made by defendants.
- Topic 7: Topic 7 requires testimony regarding costs associated with developing DOCSIS "and or modifying or revising cable modems, CMTS devices, and other equipment in response to each successive version of DOCSIS." As set forth above, CableLabs is not involved in the design of cable modems and CMTS devices. Therefore, if the Court does not quash the subpoena in its entirety, CableLabs will probably not be able to testify about this topic at all, but nevertheless, will attempt provide a witness(es) to testify as to the extent of CableLabs' existing knowledge regarding the costs associated with developing DOCSIS.
- Topic 8b: If the Court does not quash the subpoena in its entirety, it is reasonable for CableLabs to provide a witness(es) to testify only generally regarding the

types of costs that CableLabs charges to test and certify cable modems. No witness can remember all costs.

- Topics 8b, 12, 13, 15, 16 and 21: If the Court does not quash the subpoena in its entirety, CableLabs will provide a witness to testify generally regarding the creation of the DOCSIS specifications and CableLabs' general testing and certification process for cable modems and CMTS devices, including the general types of documentation CableLabs creates or receives in connection with its testing. No witness can testify to the level of detail set forth in the topics as written.
- Topic 14: Topic 14 requires the identification of "all cable modems and CMTS devices . . . including the identification of the version of software of firmware running on those cable modems or CMTS devices" submitted by defendants. As set forth above, CableLabs has tested hundreds of devices and it would be impossible to prepare a witness (or several witnesses) regarding all of the devices CableLabs has ever tested. Therefore, if the Court does not quash the subpoena in its entirety, CableLabs will provide witness(es) to testify generally regarding CableLabs' testing and certification of cable modems and CMTS devices.
- Topics 19 and 20: These topics require testimony concerning all communications regarding dozens of sections, figures and tables in the various versions of DOCSIS. It would be unduly burdensome and require the production of several witnesses to respond to these topics as written. Therefore, if the Court does not

quash the subpoena in its entirety, CableLabs will provide a witness to testify generally regarding these topics.

Rembrandt should also be limited to no more than seven hours of deposition testimony. It is well settled that a district court has broad discretion to set the length of depositions appropriate to the circumstances of the case. *See* Fed. R. Civ. P. 26(b)(2)(A) (authorizing a court to "alter the limits . . . on the length of depositions under Rule 30"); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (observing that the "district court has wide latitude to determine the scope of discovery"); *Seewald v. IIS Intelligent Info. Sys.*, No. 93-4252, 1998 U.S. Dist. LEXIS 7458, at *8 (E.D.N.Y. Apr. 23, 1998) ("[A] trial court may properly place time limits upon depositions as a method of controlling discovery.").

Rembrandt has already obtained three days of deposition testimony from CableLabs. If Rembrandt is provided a fourth day of deposition testimony pursuant to the April 1st Subpoena, Rembrandt will have taken as many days of deposition of non-party CableLabs as it is scheduled to take from each of the six MSO defendants. Accordingly, to reduce the burden on CableLabs and in light of the fact that CableLabs is a non-party, Rembrandt should be limited to seven hours of additional deposition testimony. If the April 1st Subpoena is limited to a reasonable scope, then seven hours of testimony should be ample.

## CONCLUSION

The April 1st Subpoena should be quashed in its entirety because it is unduly burdensome, because the topics are duplicative, and because Rembrandt apparently has not made any meaningful attempts to minimize the burden on nonparty CableLabs. Specifically, topics 2, 3, 4, 9, 10, and 11 have already been covered in a prior deposition of CableLabs' former General

Counsel. Therefore, those topics should be quashed. Moreover, topics 4, 6, 8a, 8c, 18, 22 and 23, are inappropriate because they call for information that is outside of CableLabs' corporate knowledge, and is better obtained from the companies who are parties to the underlying lawsuit. Finally, Rembrandt already has personal knowledge about topic 15, so that topic is unnecessary and should be quashed.

The remaining topics should also quashed because the entire subpoena is overly burdensome. Nevertheless, if the Court does not choose to quash them, they should be narrowed because they are unreasonably detailed, and therefore overly burdensome. Those topics are 1, 5, 7, 8b, 12, 13, 14, 15, 16, 19, 20, and 21.

Finally, if the Court does not quash the subpoena in its entirety, CableLabs respectfully requests that the subpoena be limited to no more than seven hours in duration.

Dated: April 6, 2009

Respectfully submitted,

s/ Mary V. Sooter

Natalie Hanlon-Leh
Mary V. Sooter
Katie R. Schwalb
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
(303) 607-3500
(303) 607-3600 (facsimile)

ATTORNEYS FOR CABLE TELEVISION LABORATORY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April 2009, I electronically filed the foregoing **CABLE TELEVISION LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF ITS AMENDED MOTION TO QUASH REMBRANDT TECHNOLOGIES, LP'S SUBPOENA OR ALTERNATIVELY FOR A PROTECTIVE ORDER** with the Clerk of the Court using the ECF/CM electronic filing system and electronically served and depositing same in the United States Mail, first class, postage prepaid to the following counsel of record:

Michael N. Nemelka
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street N.W. , Suite 400
Washington D.C. 20036
mnemelka@khhte.com

_s/ Debbi J. Camp_______________

fb.us.3826981.02