# EXHIBIT 3

**CT CORPORATION**
A WoltersKluwer Company

# Service of Process Transmittal

08/19/2008
CT Log Number 513765099

**TO:** Lee Zieroth, General Counsel
Cable Television Laboratories, Inc.
858 Coal Creek Circle
Louisville, CO 80027-9750

**RE:** **Process Served in Colorado**

**FOR:** Cable Television Laboratories, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RE: Rembrandt Technologies, LP // To: Cable Television Laboratories, Inc. |
| **DOCUMENT(S) SERVED:** | Subpoena, Proof of Service Form, Exhibit(s), Letter |
| **COURT/AGENCY:** | United States District Court, CO<br>Case # 07-md-1848 (GMS) |
| **NATURE OF ACTION:** | Subpoena - Documents described in Exhibit |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Denver, CO |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/19/2008 at 13:00 |
| **APPEARANCE OR ANSWER DUE:** | 9/22/08 at 10:00 a.m. - Production of documents |
| **ATTORNEY(S) / SENDER(S):** | Rebecca A. Beynon<br>Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.<br>1615 M Street, NW, Suite 400<br>Washington, DC 20036<br>202-326-7900 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 790563676717 |
| **SIGNED:** | The Corporation Company |
| **PER:** | Joyce Romero |
| **ADDRESS:** | 1675 Broadway<br>Suite 1200<br>Denver, CO 80202 |
| **TELEPHONE:** | 303-629-2500 |



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

8-19-08 / Fn 0ml

AO88 (Rev. 12/07) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

District of Colorado

In re:
REMBRANDT TECHNOLOGIES, LP
PATENT LITIGATION

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] MDL No. 07-md-1848 (GMS)

Pending in the District of Delaware

TO: Cable Television Laboratories, Inc.
c/o CT Corporation
1675 Broadway, Suite 1200
Denver, CO 80202

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. See Exhibit B, attached hereto.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| At a location to be agreed upon by the parties. | 9/22/2008 10:00 am |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Hunter & Geist<br>1900 Grant Street, Suite 800, Denver, CO 80203 | 8/7/2008 9:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Attorney for Plaintiff Rembrandt Technologies, LP | 7/17/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Rebecca A. Beynon, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, NW, Suite 400 Washington, DC 20036 Tel.: (202) 326-7900

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________ DATE

______________________ SIGNATURE OF SERVER

______________________ ADDRESS OF SERVER

______________________

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

**ATTACHED TO REMBRANDT'S SUBPOENA TO CABLE TELEVISION LABORATORIES, INC.**

**DEFINITIONS**

1. The phrase "relating to" means discussing, describing, referring to, pertaining to, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

2. The term "document" or "documents" is used in the broadest sense permitted by the Federal Rules of Civil Procedure and means the original (or any copy when originals are not available) and any drafts or non-identical copies thereof, whether different from the original because of interlineation, receipt stamp, notation of copy sent or received or otherwise, of any book, pamphlet, periodical, letter, report, note, memorandum, record, minutes, calendar or diary entry, transcript, study, compilation, patent, patent application, analysis, tabulation, map, diagram, drawing, plan, picture, summary, working paper, chart, paper, graph index, data sheet, data processing card, computer printout, summary of a computer printout, tape, contract, agreement, lease, ledger, journal, balance sheet, account, invoice, purchase order, receipt, billing record, financial data, financial statement, file, diary, film, trip tickets, telex, teletype or other messages, telegram, expense vouchers, instructions, bulletins or any other writing or recording of information, however produced, recorded, maintained or reproduced, including any electronic or mechanical recording of any oral material, within the possession, custody or control of defendant or any of its officers, directors, employees, attorneys, or other agents and/or representatives.

3. The term "including" shall mean including but not limited to.

4. The term "person" means natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, or other business, legal or governmental entity or association, including any directors, officers, employees, agents or representatives thereof.

5. The term "communication" (or any variant thereof) means any contact between or among two or more Persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mail, or any other document; the transmittal of information by any means; any oral contact such as face-to-face meetings or telephone conversations; and any writings memorializing such oral contact.

6. "Thing" means any tangible object other than a Document including, without limitation, objects of every kind and nature, as well as prototypes, models, drafts, or specimens thereof.

7. As used herein, "the MSO Defendant(s)" means the following entities and their subsidiaries, affiliates, divisions, successors or assignees, and their respective officers, directors, employees, and agents: Time Warner Cable, Inc., Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner Entertainment Company, LP, Time Warner Entertainment–Advance/Newhouse Partnership, Comcast Corporation, Comcast Cable Communications, LLC, Charter Communications, Inc., Charter Communications Operating, LLC, Coxcom, Inc., Cox Communications, Inc., Cox Enterprises, Inc., CSC Holdings, Inc., Cablevision Systems Corporation, Adelphia Communications Corporation, Century-TCI

California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Parnassos, LP, Parnassos Communications, LP, Adelphia Consolidation, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP, Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc. In the case of Comcast Corporation, this definition includes, without limitation, Sedna.

8. As used herein, "CableLabs," "you," or "your" means Cable Television Laboratory, Inc. and its agents, subsidiaries, related entities, affiliated companies, predecessors, successors, assigns, officers, directors, partners, employees, representatives (in their individual or representative capacities), affiliates of any kind or nature, or any person or entity acting on their behalf.

9. As used herein, "Rembrandt" shall mean Rembrandt Technologies, LP including without limitation all of its corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys.

10. The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of these requests all documents which might otherwise be construed to be outside their scope.

11. The term "all" shall mean any and all, and the term "any" shall mean any and all, unless the context clearly requires otherwise.

12. References to the singular shall include the plural, and references to the plural shall include the singular as may be appropriate or construe the individual document requests in the broadest form.

13. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or pronoun, and vice versa as may be appropriate to make the individual document requests inclusive rather than exclusive.

14. Any reference to any individual person, either singularly or as a part of a defined group, includes that individual person's employees, agents, successors, assignees, heirs, and representatives.

15. As used herein, "Rembrandt multi-district litigation" means the litigation styled *In re Rembrandt Technologies, LP Patent Litig.*, MDL Docket No. 07-md-1848 (D. Del.), and the cases of which the multi-district litigation is comprised, including: *Rembrandt Technologies, LP v. Cablevision Systems Corp. et al.*, Civil Action No. 1:06-635 (D. Del.); *Coxcom, Inc. v. Rembrandt Technologies, LP*, C.A. No. 1:06-721 (D. Del.); *Rembrandt Technologies, LP v. CBS Corp.*, C.A. No. 1:06-727 (D. Del.); *Rembrandt Technologies, LP v. NBC Universal, Inc.*, C.A. No. 1:06-730 (D. Del.); *Rembrandt Technologies, LP v. ABC, Inc.*, C.A. No. 1:06-730 (D. Del.); *Rembrandt Technologies, LP v. Fox Entertainment Group, Inc., et al.*, C.A. No. 1:06-731 (D. Del.); *Rembrandt Technologies, LP v. Adelphia Communications Corp., et al.*, Bky. Advy. No. 1:06-1739 (Bankr. SDNY); *Rembrandt Technologies, LP v. Adelphia Communications Corp.*, C.A. No. 1:07-214 (SDNY); *Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:05-443 (E.D. Tex.); *Rembrandt Technologies, LP v. Sharp Corp., et al.*, C.A. No. 2:06-47 (E.D. Tex.); *Rembrandt Technologies, LP v. Charter Communications, Inc. et al.*, C.A. No. 2:06-223 (E.D. Tex.); *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, C.A. No. 2:06-224 (E.D. Tex.); *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, C.A. No. 2:06-369 (E.D.

Tex.); *Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:06-506 (E.D. Tex.); *Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, C.A. No. 2:06-507 (E.D. Tex.).

16. "Related Action" means each case of which the multi-district litigation is comprised (see ¶ 15 above), as well as *Rembrandt Technologies, LP v. Harris Corp.*, C.A. No. 07C-09-059-JRS (Del. Super. Ct.) and *Motorola, Inc., et al. v. Rembrandt Technologies, LP*, C.A. No. 07-752 (D. Del.).

17. The term "Patents-in-Suit" shall mean United States patents numbers: 6,131,159; 5,710,761; 5,778,234; 6,950,444; 5,008,903; 4,937,819; 5,719,858; and 5,852,631.

18. As used herein, the term "CableLabs" shall mean Cable Television Laboratories, Inc. and its agents, subsidiaries, related entities, affiliated companies, predecessors, successors, assigns, officers, directors, partners, employees, representatives (in their individual or representative capacities), affiliates of any kind or nature, or any person or entity acting on their behalf.

19. The term "cable industry" shall mean entities, including but not limited to the MSO Defendants, that provide "cable services" within the meaning of 47 U.S.C. § 522(6) or that provide to such entities information, products, or services related to the provision of cable services within the meaning of 47 U.S.C. § 522(6).

20. The term "Accused Products and Services" shall include all of Defendants' services or products that involve in any way a cable modem or the use of a cable modem, including but not limited to providing high speed cable internet services and VoIP services.

21. The term "DOCSIS" shall refer to the commonly known industry specifications referred to as DOCSIS 1.0, DOCSIS 1.1, DOCSIS 2.0, and DOCSIS 3.0.

22. "DOCSIS-Compliant Devices" include cable modems or cable modem termination systems that comply with any of the DOCSIS 1.0, 1.1, 2.0, or 3.0 specifications, manufactured, sold, leased, or offered for sale by CableLabs, that have been offered for sale, leased, or sold to the MSO Defendants, or used by the MSO Defendants.

23. "Timeslot" means a "mini-slot" as described in DOCSIS 1.1 at § 6.1.2.4.

24. "MAP" means the mechanism for managing upstream bandwidth as described in DOCSIS 1.1 at § 7.1.

25. "REQUEST Information Element" shall have the meaning provided in DOCSIS 1.1 at § 7.1.2.1.

26. "REQUEST / DATA Information Element" shall have the meaning provided in DOCSIS 1.1 at § 7.1.2.2.

27. "Unsolicited Grant Service" shall have the meaning provided in DOCSIS 1.1 at Appendix M.1.1.

28. "Service Flow" shall have the meaning provided in DOCSIS 1.1 at § 8.1.1.1.

29. Unless otherwise specified, the time period covered by each individual document request herein is June 26, 1990.

## INSTRUCTIONS

1. All documents that you produce shall be organized and produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

2. If you are unable to comply with a demand for any document in full, you are requested to specify, pursuant to Federal Rule of Civil Procedure 34, whether your inability to comply is because the document has never existed, has been destroyed, has been lost, misplaced or stolen, and/or has never been, or is no longer in your possession, custody, or control. The statement shall set forth the name and address of any person or organization known or believed by you to have possession, custody, or control of the document.
3. To the fullest extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure, each request shall be deemed continuing so as to require further and supplemental production if you receive, discover, become aware of or create additional responsive documents subsequent to the date of your response to these document requests.
4. If you object to or otherwise refuse to comply with any portion of a document request, please (i) state the objection or reason for such refusal, and (ii) provide all information called for by that portion of the document request to which you do not object or which you do not decline to answer as follows:
    a. If you object to a document request on the ground that it is too broad (i.e. you believe it calls for information or documents some of which is not relevant to any claim or defense and will not provide leads to admissible evidence), you shall answer that document request by providing as many documents as you admit is relevant or likely to lead to the discovery of relevant information;
    b. If you object to a document request on the ground that to respond would constitute an undue burden, then you shall respond as fully as possible without undertaking such asserted undue burden; and

c. If you object to any portion of a document request on the ground that it is vague or indefinite, you shall set forth your good faith understanding of the allegedly vague or indefinite term and shall then respond to the document request based upon that stated understanding.

5. If any document requested herein is claimed to be privileged or otherwise withheld, in whole or in part, you must identify each document and provide the following information:

   a. Identification of the person who created, wrote, or prepared the document and, if applicable, the person to whom the document (or copies of it) was sent;
   b. Date on which the document was created, written, prepared, and/or transmitted;
   c. Description of the nature of the document (e.g., letter, e-mail, memorandum);
   d. Description of the subject matter of the document;
   e. Number of pages the document contains; and
   f. Whether the document is privileged or otherwise withheld, and why the document is privileged or withheld.

6. Each request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever, in the possession, custody, or control of you or your respective agents or attorneys. You are specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

**REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

Please produce the following documents pursuant to Fed. R. Civ. P. 45:

1. All documents produced pursuant to any previously served subpoena in a Related Action, including *Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:05-443 (E.D. Tex.).

2. All documents concerning any existing or proposed business agreements with the MSO Defendants.

3. Documents sufficient to determine the extent to which the DOCSIS-Compliant Devices are used by the MSO Defendants or their customers in the MSO Defendants' cable networks.

4. Documents sufficient to determine the price at which the DOCSIS-Compliant Devices were sold or leased to the MSO Defendants or their customers.

5. Documents sufficient to show the volume of each of the DOCSIS-Compliant Devices sold or leased to the MSO Defendants or their customers.

6. All documents concerning communications between CableLabs and the MSO Defendants regarding the DOCSIS-Compliant Devices.

7. All documents relating to Rembrandt, including but not limited to communications between CableLabs and the MSO Defendants regarding Rembrandt.

8. All documents regarding communications with CableLabs or CableLabs representatives, including all communications relating to the creation and/or adoption of all versions and drafts of DOCSIS.

9. All documents mentioning or concerning any of the Patents-in-Suit, their applications, or the named inventors of the Patents-in-Suit.

10. All documents concerning your knowledge of any of the Patents-in-Suit, including documents indicating when you became aware of any of the Patents-in-Suit.

11. Documents, including source code, design documents, interface or product specifications, flowcharts, models, drawings, promotional literature, advertising, engineering, design, engineering analysis and testing, user manuals, instruction manuals, catalogs, and operation documents for every model of cable modem sold or leased by you to the MSO Defendants.

12. All documents concerning any analysis, opinion, or inquiry regarding potential infringement of the claims in each of the Patents-in-Suit, including, but not limited to any documents concerning or relating to pre-litigation investigations performed by or on behalf of you, your partners, your licensors, your customers, your resellers, and/or your affiliates, related to the potential infringement by any products or systems made, used, offered for sale, and/or sold by you, your partners, your licensors, your customers, you resellers, and/or your affiliates.

13. All correspondence with counsel and other documents expressing opinions on or concerning the validity, invalidity, infringement, non-infringement, enforceability, non-enforceability, or license (either express or implied) as to any of the Patents-in-Suit.

14. All documents relating to any communications with your sales force, agents, dealers, wholesalers, retailers, representatives, distributors, the press, any news wire, or any other third-party concerning any of the Patents-in-Suit, Rembrandt, Remstream, Rembrandt Technologies, LLC, or the Rembrandt multi-district litigation or Related

Actions. This request includes, but is not limited to, communications with the MSO Defendants.

15. All documents reflecting communications with any person or entity regarding Rembrandt, the Rembrandt multi-district litigation, Related Actions, and/or any of the Patents-in-Suit, with the exception of persons you have retained as counsel in relation to the Rembrandt multi-district litigation.

16. All documents concerning any analysis or efforts by you to design any products around the Patents-in-Suit.

17. All documents that refer or relate to any prior art reference that you believe anticipate or render obvious any of the Patents-in-Suit.

18. All documents and communications by, with, or involving CableLabs related to: (i) the Patents-in-Suit, (ii) Rembrandt or Remstream, and/or (iii) litigation between any of the Defendant MSOs and Rembrandt.

19. All documents and communications by, with, or involving CableLabs evidencing or suggesting that CableLabs or any of the MSO Defendants knew or had reason to know about the Patents-in-Suit, Rembrandt, or Remstream.

20. All documents and communications evidencing or suggesting that CableLabs or any of the MSO Defendants knew or had reason to know that any of the MSO Defendants lacked patent rights that were necessary to make, sell, use, or import equipment that operates in compliance with DOCSIS..

21. All documents and communications evidencing or suggesting any decision or policy by CableLabs or any of the MSO Defendants to refrain from identifying, searching

for, or reviewing patents that are necessary to make, sell, use, or import equipment that operates in compliance with DOCSIS.

22. All documents and communications by CableLabs or any of the MSO Defendants concerning the applicability of the Patents-in-Suit to DOCSIS.

23. All documents setting forth the organizational structure and personnel of each of your units, departments, divisions, or other entities associated with the design, manufacture, and marketing of the DOCSIS-Compliant Devices to the MSO Defendants.

**EXHIBIT B**

**ATTACHED TO REMBRANDT'S SUBPOENA TO CABLE TELEVISION LABORATORIES, INC.**

**DEFINITIONS**

All definitions set forth in Exhibit A attached to Rembrandt's Subpoena to CableLabs are incorporated herein in their entirety.

**INSTRUCTIONS**

This subpoena calls for you to designate and make available for the purpose of giving testimony at the deposition the officer(s), director(s), managing agent(s), and/or other person(s) who is (are) most knowledgeable and able to testify about each of the subjects identified below under the heading "Deposition Topics."

**DEPOSITION TOPICS**

1. Your knowledge of the design and operation of the MSO Defendants' cable networks.
2. Your knowledge of the market and industry for any high speed data service, including Internet service, over a cable network and potential or actual customers of the MSO Defendants for any such service.
3. Your knowledge of the market and industry for receiving digital television over a cable network and potential or actual customers of the MSO Defendants for this service.
4. The quantity of each of the DOCSIS-Compliant Devices sold or leased by you to the MSO Defendants.
5. The manufacture, sale or lease of the DOCSIS-Compliant Devices.

6. All communications between you and the MSO Defendants or any third party, including your customers, potential customers, suppliers, and business partners, regarding the Rembrandt multi-district litigation.

7. The structure, function, and operation of the DOCSIS-Compliant Devices.

8. All communications between you and the FCC or any other regulatory agency, foreign or domestic, regarding the DOCSIS-Compliant Devices.

9. All public statements by you regarding the Rembrandt multi-district litigation, and the basis for any such statements.

10. The distribution, sale, lease, or import of the DOCSIS-Compliant Devices.

11. The marketing and promotion of the DOCSIS-Compliant Devices to the public, including your participation in any trade shows, conferences, symposiums, or seminars.

12. The identity of all entities that sell or offer to sell products that compete in the marketplace with the DOCSIS-Compliant Devices, including the identity of the competing products sold or offered for sale by those entities.

13. Your search for and production or non-production of documents in response to this Subpoena.

14. Each of the DOCSIS-Compliant Devices, including their compliance or lack of compliance with any version of the DOCSIS specifications.

15. Your knowledge of the manner in which each of the DOCSIS-Compliant Devices is used, including use by the MSO Defendants, installation by the MSO Defendants or their agents in a customer's home, and use by the customer.

16. The development of any software, firmware, or other instructions intended to be executed by a processor or microprocessor associated with the DOCSIS-Compliant Devices, including an identification of the person responsible for such development.

17. All communications between CableLabs and the MSO Defendants regarding Rembrandt, including communications regarding the DOCSIS-Compliant Devices or the Rembrandt multi-district litigation.

18. All license agreements between CableLabs and any party for the right to make, use, sell, or import any device compliant with the DOCSIS 1.0, DOCSIS 1.1, DOCSIS 2.0, or DOCSIS 3.0 specifications, or any related standard or specification, from June 26, 1990 to present.

19. The DOCSIS 1.0, DOCSIS 1.1, DOCSIS 2.0, and DOCSIS 3.0 specifications including the development of these specifications and any related specifications.

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209

(202) 326-7900
FACSIMILE:
(202) 326-7999

July 17, 2008

***Via Hand Delivery***

Cable Television Laboratories, Inc.
c/o CT Corporation
1675 Broadway, Suite 1200
Denver, CO 80202

Re: *In re Rembrandt Technologies, LP Patent Litigation*, MDL Docket No. 07-md-1848 (GMS), subpoena for the production of documents and designation of persons able to testify

To Whom It May Concern:

Enclosed please find a subpoena requesting the production of documents and an appearance for the taking of a deposition. Two exhibits are attached to the subpoena. Exhibit A identifies the categories of documents for which we request production, and Exhibit B requests the designation of persons who are most knowledgeable and able to testify about the provided list of topics. We represent Rembrandt Technologies, LP, a party in the above-captioned multi-district litigation that is currently pending in the United States District Court for the District of Delaware. The case concerns patents owned by Rembrandt that pertain to the transmission of data over cable networks.

The subpoena covers all documents in your possession, custody, or control to the extent those documents are included in the categories set forth in the attached Exhibit A. The subpoena also requires you to identify, and make available to testify at a deposition, persons who are most knowledgeable about the provided list of topics in Exhibit B.

The subpoena calls for you to produce documents at a location within the federal judicial district from which this subpoena has issued. We would waive this requirement, however, if you would provide the produced documents, and the list of names of those who have the most knowledge about the topics in Exhibit B, to our offices here in Washington, D.C. If you choose to avail yourself of this option, our address is listed above, and you may address the documents to me.

After you have reviewed the subpoena and the attached exhibits, we would be glad to discuss them with you and address any other questions you may have. Please feel free to contact me at 202.326.7934 or by e-mail at rbeynon@khhte.com.

Thank you for your prompt attention to this matter.

Very truly yours,

/s/ Rebecca A. Beynon

Enclosure