# EXHIBIT 6

CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

WILMINGTON, DE

JAMES D. HEISMAN
Partner
**Tel** 658-9141
**Fax** 252-4208
**Email** jheisman@cblh.com
**Reply to** Wilmington Office

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

September 22, 2008

***Via Email and U.S. mail***
Mary V. Sooter, Esq.
Faegre & Benson LLP
1900 Fifteenth Street
Boulder, CO 80302-5414

*Re:* *In re Rembrandt Technologies, LP Patent Litigation*, MDL No. 07-md-1848, Subpoenas to Cable Television Laboratories, Inc.

Dear Mindy:

As you requested, Rembrandt has gone back through the subpoenas that have been served upon Cable Television Laboratories, Inc. ("CableLabs") and endeavored both to consolidate and to narrow the previous requests. We have attempted to eliminate any potential duplication, to eliminate requests to which CableLabs has already indicated that it lacks responsive documents, and to focus several of the requests towards the documents believed to be essential. We have changed some of the definitions and modified some of the items in order to tailor the requests more narrowly. We additionally have scaled back the scope of the subpoenas, reducing the total number of document requests down to 51.[1] These revisions, which are set forth in the revised "Exhibit A" that is enclosed herein, should reduce the burden on CableLabs. This revised Exhibit A supersedes the prior subpoenas. If CableLabs is amenable, Rembrandt would propose that the parties agree to treat the revised Exhibit A as the operative document, with an October 22, 2008 date for compliance with subpoena. Please let me know if CableLabs will agree to do so, thereby avoiding the needless burden of serving a new subpoena upon CableLabs.

As you may be aware, Rembrandt has alleged in the MDL proceeding that its patents are infringed by certain DOCSIS-Compliant equipment and systems. Such equipment is collectively referred to herein as the "Accused Products." CableLabs' testing and evaluation of the Accused Products, and Defendants' applications for DOCSIS certification of the Accused Products, are therefore important to the case. Accordingly, several of the document requests in the revised Exhibit A have been tailored to focus on documents and communications related to the DOCSIS

[1] This number includes requests that had been served in the case of *Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:05-443 (E.D. Tex.), in response to which CableLabs has previously produced (and recently re-produced) documents. These requests should pose no additional burden on CableLabs, and have been included simply to ensure that CableLabs has fully responded to the subpoena served in the earlier litigation.

certification of the Accused Products. *See, e.g.*, Request Nos. 4, 9-10, and 42. To guide CableLabs' search for responsive documents, Rembrandt has also identified (in the new definition of "Specified DOSCIS Sections") particular sections of the DOCSIS specifications implicated in the litigation.

In an attempt to narrow the requests further, Rembrandt is willing to limit certain requests to particular equipment. Specifically, while the subpoena seeks materials relevant to all of the Accused Products, Rembrandt would propose that, in responding to Document Request Nos. 4, 9-10, and 42, CableLabs focus its attention on the specific devices included on the list attached as Exhibit B hereto. Discovery in the MDL is ongoing, and it is therefore possible that Rembrandt may need to obtain information relating to additional devices. Provided that CableLabs will agree that Rembrandt may, if necessary, supplement this list of devices, Rembrandt will agree that CableLabs need not produce at this time documents for all DOCSIS-Compliant Devices as requested by the subpoena.

Finally, we wanted to reiterate that, as we previously have discussed, Rembrandt intends to re-notice a Rule 30(b)(6) deposition of CableLabs at a mutually agreeable date after CableLabs has produced, and Rembrandt has had the opportunity to review, documents responsive to the document subpoena.

Please let me know at your earliest convenience whether CableLabs will agree to treat the document requests set forth in the revised Exhibit A as the operative requests, thus avoiding the unnecessary burden of serving an additional subpoena. In addition, please let me know whether Rembrandt's proposal initially to limit the devices relevant to Request Nos. 4, 9-10, and 42 is acceptable to CableLabs.

I am available at your convenience to discuss any of the foregoing.

Sincerely,

James D. Heisman

Enclosures
636628/15277*1

# EXHIBIT A

## ATTACHED TO REMBRANDT'S SUBPOENA TO CABLE TELEVISION LABORATORIES, INC.

## DEFINITIONS

1. The phrase "relating to" means discussing, describing, referring to, pertaining to, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

2. Each of the words "relate," "regard," "concern," and "refer," and all derivatives thereof, signify reference, relation, or relevance to the subject matter, source document or thing (if any), and any document or thing that contains, records, discusses, involves, concerns, mentions, notes, evidences, memorializes, examines, describes, regards, pertains to, comments upon, reflects, identifies, or refers in any way to the matters set forth in the subject matter, source document, or thing.

3. The term "document" or "documents" is used in the broadest sense permitted by the Federal Rules of Civil Procedure and means the original (or any copy when originals are not available) and any drafts or non-identical copies thereof, whether different from the original because of interlineation, receipt stamp, notation of copy sent or received or otherwise, of any book, pamphlet, periodical, letter, report, note, memorandum, record, minutes, calendar or diary entry, transcript, study, compilation, patent, patent application, analysis, tabulation, map, diagram, drawing, plan, picture, summary, working paper, chart, paper, graph index, data sheet, data processing card, computer printout, summary of a computer printout, tape, contract, agreement, lease, ledger, journal, balance sheet, account, invoice, purchase order, receipt, billing

record, financial data, financial statement, file, diary, film, trip tickets, telex, teletype or other messages, telegram, expense vouchers, instructions, bulletins or any other writing or recording of information, however produced, recorded, maintained or reproduced, including any electronic or mechanical recording of any oral material, within the possession, custody or control of defendant or any of its officers, directors, employees, attorneys, or other agents and/or representatives. The term "document" encompasses electronically stored information, including without limitation electronic files in their native format stored with any associated metadata.

4. The term "including" shall mean including but not limited to.

5. The term "person" means natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, or other business, legal or governmental entity or association, including any directors, officers, employees, agents, or representatives thereof.

6. The term "communication" (or any variant thereof) means any contact between or among two or more persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mail, or any other document; the transmittal of information by any means; any oral contact such as face-to-face meetings or telephone conversations; and any writings memorializing such oral contact.

7. "Thing" means any tangible object other than a Document including, without limitation, objects of every kind and nature, as well as prototypes, models, drafts, or specimens thereof.

8. "CableLabs," "you," or "your" mean and include Cable Television Laboratory, Inc. and its agents, subsidiaries, related entities, affiliated companies, predecessors, successors, assigns, officers, directors, partners, employees, representatives (in their individual or representative capacities), affiliates of any kind or nature, or any person or entity acting on their behalf.

9. The terms "Multiple Systems Operator(s)" and "MSO Defendant(s)" mean and include the following entities and their subsidiaries, affiliates, divisions, successors or assignees, and their respective officers, directors, employees, and agents: Comcast Corporation; Comcast Cable Communications, LLC; Comcast Cable Communications Holdings, Inc.; Comcast of Plano, LP; Sedna (defined below); Time Warner Cable, Inc.; Time Warner Cable, LLC; Time Warner New York Cable, LLC; Time Warner Entertainment Company, LP; Time Warner Entertainment-Advance/Newhouse Partnership; Charter Communications, Inc.; Charter Communications Operating, LLC; Coxcom, Inc.; Cox Communications, Inc.; Cox Enterprises, Inc.; Cablevision System Corporation; CSC Holdings, Inc.; Adelphia Communications Corporation; Century-TCI California Communications, LP; Century-TCI Holdings, LLC; Comcast of Florida/Pennsylvania, LP (f/k/a Parnassos, LP), Comcast of Pennsylvania II, LP (formerly Century-TCI California, LP), Parnassos Communications, LP; Adelphia Consolidation, LLC; Parnassos Holdings, LLC; and Western NY Cablevision, LP.

10. "Sedna" means and includes Sedna Patent Services, LLC, and its agents, subsidiaries, related entities (including Sedna Services, LLC), affiliated companies, predecessors (including TV Gateway LLC), successors, assigns, officers, directors,

partners, employees, representatives (in their individual or representative capacities), affiliates of any kind or nature, or any person or entity acting on their behalf.

11. The terms "Cable Equipment Vendor(s)" and "Equipment Vendor Defendant(s)" mean and include the following entities and their subsidiaries, affiliates, divisions, successors or assignees, and their respective officers, directors, employees, and agents: Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc.

12. "Sharp" means and includes Sharp Corporation and Sharp Electronics Corporation, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with any one or more of them, and others acting on behalf of any one or more of them.

13. The terms "Broadcaster(s)" and "Broadcaster Defendant(s)" mean and include the following entities and their subsidiaries, affiliates, divisions, successors or assignees, and their respective officers, directors, employees, and agents: ABC, Inc., CBS Corporation, Fox Entertainment Group, Inc., Fox Broadcasting Company, and NBC Universal, Inc.

14. The term "Defendant(s)" shall mean and include each person that is a Defendant in the *Rembrandt* MDL (defined below), including each of Sharp, the Broadcaster Defendants, the Equipment Vendor Defendants, and the MSO Defendants.

15. As used herein, "Rembrandt" shall mean Rembrandt Technologies, LP including without limitation all of its corporate locations, and all predecessors, and affiliates,

and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys.

16. "Remstream" means Rembrandt Technologies, LLC d/b/a Remstream, including without limitation all of its corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys.

17. The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of these requests all documents which might otherwise be construed to be outside their scope.

18. The term "all" shall mean any and all, and the term "any" shall mean any and all, unless the context clearly requires otherwise.

19. References to the singular shall include the plural, and references to the plural shall include the singular as may be appropriate to construe the individual document requests in the broadest form.

20. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or pronoun, and vice versa as may be appropriate to make the individual document requests inclusive rather than exclusive.

21. Any reference to any individual person, either singularly or as a part of a defined group, includes that individual person's employees, agents, successors, assignees, heirs, and representatives.

22. As used herein, "*Rembrandt* multi-district litigation" and/or "*Rembrandt* MDL" means the litigation styled *In re Rembrandt Technologies, LP Patent Litig.*, MDL Docket No. 07-md-1848 (D. Del.), and the cases of which the multi-district litigation

is comprised, including: *Rembrandt Technologies, LP v. Cablevision Systems Corp. et al.*, Civil Action No. 1:06-635 (D. Del.); *Coxcom, Inc. v. Rembrandt Technologies, LP*, C.A. No. 1:06-721 (D. Del.); *Rembrandt Technologies, LP v. CBS Corp.*, C.A. No. 1:06-727 (D. Del.); *Rembrandt Technologies, LP v. NBC Universal, Inc.*, C.A. No. 1:06-730 (D. Del.); *Rembrandt Technologies, LP v. ABC, Inc.*, C.A. No. 1:06-730 (D. Del.); *Rembrandt Technologies, LP v. Fox Entertainment Group, Inc., et al.*, C.A. No. 1:06-731 (D. Del.); *Rembrandt Technologies, LP v. Adelphia Communications Corp., et al.*, Bky. Advy. No. 1:06-1739 (Bankr. SDNY); *Rembrandt Technologies, LP v. Adelphia Communications Corp.*, C.A. No. 1:07-214 (SDNY); *Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:05-443 (E.D. Tex.); *Rembrandt Technologies, LP v. Sharp Corp., et al.*, C.A. No. 2:06-47 (E.D. Tex.); *Rembrandt Technologies, LP v. Charter Communications, Inc. et al.*, C.A. No. 2:06-223 (E.D. Tex.); *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, C.A. No. 2:06-224 (E.D. Tex.); *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, C.A. No. 2:06-369 (E.D. Tex.); *Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:06-506 (E.D. Tex.); *Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, C.A. No. 2:06-507 (E.D. Tex.).

23. "Related Action" means each case of which the multi-district litigation is comprised (see ¶ 22 above), as well as *Rembrandt Technologies, LP v. Harris Corp.*, C.A. No. 07C-09-059-JRS (Del. Super. Ct.) and *Motorola, Inc., et al. v. Rembrandt Technologies, LP*, C.A. No. 07-752 (D. Del.).

24. The term "Patents-in-Suit" shall mean United States patents numbers: 6,131,159 (the "'159 patent"); 5,710,761 (the "'761 patent"); 5,778,234 (the "'234 patent");

6,950,444 (the "'444 patent"); 5,008,903 (the "'903 patent"); 4,937,819 (the "'819 patent"); 5,719,858 (the "'858 patent"); 5,852,631 (the "'631 patent"); and 5,243,627 (the "'627 patent").

25. The term "8 Patents" shall refer to the '159 patent, the '761 patent, the '234 patent, the '444 patent, the '903 patent, the '819 patent, the '858 patent, and the '631 patent.

26. The term "cable industry" shall mean entities, including the MSO Defendants, that provide "cable services" within the meaning of 47 U.S.C. § 522(6) or that provide to such entities information, products, or services related to the provision of cable services within the meaning of 47 U.S.C. § 522(6).

27. The term "modem" means any cable modem or cable modem termination system.

28. The term "DOCSIS" shall refer to the commonly known industry specifications referred to as DOCSIS 1.0, DOCSIS 1.1, DOCSIS 2.0, and DOCSIS 3.0.

29. The term "DOCSIS RFI Specification 1.0" shall mean the DOCSIS Radio Frequency Interface (RFI) 1.0.

30. The term "DOCSIS RFI Specification 1.1" shall mean the DOCSIS Radio Frequency Interface (RFI) 1.1.

31. The term "DOCSIS RFI Specification 2.0" shall mean the DOCSIS Radio Frequency Interface (RFI) 2.0.

32. The term "DOCSIS Specification 3.0" shall mean the DOCSIS 3.0 Physical Layer Specification and the DOCSIS 3.0 Media Access Control (MAC) and Upper Layer Protocols Interface Specification.

33. The term "DOCSIS Specifications" shall mean the DOCSIS RFI Specifications 1.0, 1.1, and 2.0, and DOCSIS Specification 3.0.

34. The term "DOCSIS Certification" means and includes DOCSIS certification, qualification, and/or recertification.

35. The term "DOCSIS-Compliant Devices" means and includes any modem that has been: (i) certified, qualified, or recertified as complying with any of the DOCSIS Specifications; and (ii) manufactured, sold, leased, or offered for sale by any Equipment Vendor Defendant, or purchased, leased, or otherwise used by any MSO Defendant.

36. "Specified DOCSIS Sections" means the following sections from the DOCSIS Specifications:

| **DOCSIS RFI Specification 1.0** | **DOCSIS RFI Specification 1.1** | **DOCSIS RFI Specification 2.0** | **DOCSIS Specification 3.0** | |
|---|---|---|---|---|
| | | | MAC and Upper Layer Protocols Interface Specification | Physical Layer Specification |
| 1.1, 1.3.1 | 1, 1.1, 1.3.1, 1.3.4 | 1, 1.1, 1.3.1 | 1.2.4 | 1.2.4 |
| 2.2.1 | 2.2.1 | | | |
| 3.1, 3.4, 3.5, 3.5.3, 3.6 | 3.1, 3.4, 3.5, 3.5.3, 3.6 | | | |
| 4.2, 4.2.1, 4.2.2, 4.2.2.1, 4.2.3.1, 4.2.6, 4.2.7 | 4.2, 4.2.1, 4.2.2, 4.2.2.1, 4.2.3.1, 4.2.6, 4.2.7, 4.2.10.3 | 4.2.1 | | |
| | | 5.1, 5.4, 5.5, 5.5.3, 5.5.6, 5.6 | | 5.1.1 |
| 6.1.2.3, 6.2.6, 6.3.2.1, 6.3.2.2, 6.3.2.3, 6.3.2.4, 6.3.2.5, 6.3.2.5.1, 6.3.2.7, 6.3.2.7.1.2, 6.4, 6.4.1, 6.4.1.1, 6.4.1.1.1, 6.4.1.1.2, 6.4.1.1.3, 6.4.1.1.4, | 6.1.2.3, 6.2.6, 6.3.2, 6.3.2.2, 6.3.4, 6.3.5, 6.3.6, 6.3.6.1, 6.3.8, 6.3.8.1.2 | 6.2, 6.2.1, 6.2.3, 6.2.4, 6.2.4.1, 6.2.6, 6.2.8, 6.2.9, 6.2.10, 6.2.13, 6.2.15, 6.2.19, 6.2.19.1, 6.2.21.3 | 6.2.1.6, 6.4.2, 6.4.20.1, 6.4.20.1.3, 6.4.3, 6.4.4, 6.4.5, 6.4.5.1, 6.4.6, 6.4.8.1, 6.4.8.3.2, | 6.2, 6.2.10, 6.2.11, 6.2.11.2, 6.2.12.2, 6.2.14, 6.2.16, 6.2.20, 6.2.20.1, 6.2.3, 6.2.4, 6.2.4.1, 6.2.7, 6.2.9 |

| | | | | |
|---|---|---|---|---|
| 6.4.1.1.5, 6.4.1.2, 6.4.2, 6.4.4, 6.5, 6.5.1, 6.5.3, 6.5.4 | | | | |
| 7.2, 7.2.4, 7.2.4.2, 7.2.10 | 7.1, 7.1.1, 7.1.2, 7.1.2.1, 7.1.2.2, 7.1.2.3, 7.1.2.4, 7.1.2.5, 7.1.2.6, 7.1.2.7, 7.1.2.8, 7.1.3, 7.1.5, 7.2, 7.3, 7.3.1, 7.3.3, 7.3.4, 7.4, 7.4.1 | | 7.1, 7.1.1, 7.1.3, 7.1.4, 7.1.4.1.2, 7.2, 7.2.1, 7.2.1.1, 7.2.1.2.1, 7.2.1.2.2, 7.2.1.2.3, 7.2.1.2.5, 7.2.1.2.9, 7.2.1.6, 7.2.2, 7.2.3, 7.2.3.1 | |
| 8.2 | 8.1, 8.2, 8.2.1, 8.2.2, 8.2.4 | 8.1.2.3, 8.2.6, 8.3.2, 8.3.3, 8.3.4, 8.3.5, 8.3.6, 8.3.6.1, 8.3.8, 8.3.8.1.2 | | |
| | 9, 9.2, 9.2.4, 9.2.11, 9.3 | 9.1, 9.1.1, 9.1.2, 9.1.2.1, 9.1.2.2, 9.1.2.3, 9.1.2.4, 9.1.2.5, 9.1.3, 9.1.5, 9.2, 9.3, 9.3.1, 9.3.3, 9.3.3.1, 9.3.4 , 9.3.4.1.2, 9.4, 9.4.1 | | |
| | 10, 10.1 | 10.1, 10.2, 10.2.1, 10.2.2, 10.2.4 | 10.2, 10.2.3.7, 10.3 | |
| | | 11, 11.2, 11.2.1, 11.2.2, 11.2.4, 11.3 | | |
| | | 12, 12.1 | 12.1 | |
| App. C.7.7<br>App. C.7.7.3<br>Fig. 1-1<br>Fig. 1-2<br>Fig. 7-6<br>Fig. 7-7<br>Fig. 7-8 | App. C.1.3.1.11<br>App. C.2.2.6.3<br>App. G<br>App. M.1.1<br>Fig. 1-1<br>Fig. 1-2<br>Fig. 9-6<br>Fig. 9-7<br>Fig. 9-8 | Annex C.1.3.1.11<br>Annex C.2.2.6.3<br>Annex G<br>App. II<br>App. VI.1.1<br>Table 8-18<br>Table 8-19<br>Fig. 1-1<br>Fig. 1-2<br>Fig. 11-6<br>Fig. 11-8 | Annex C.1.3.1.11<br>Annex C.2.2.3.3<br>Annex C.2.2.6.3<br>Annex G<br>App. IV<br>Fig. 10-1<br>Fig. 10-11<br>Fig. 10-34<br>Fig. 10-35 | App. I |

| | | | | |
|---|---|---|---|---|
| | | Fig. 11-16<br>Fig. 11-17 | | |

37. The term "Specified DOCSIS Functionality" shall mean any functionality that is required, recommended, or optional in any of the Specified DOCSIS Sections.

38. "ATSC-Compliant Device Suppliers" means and includes all persons who have supplied ATSC-Compliant Devices to any of the Multiple System Operators or the Broadcasters, including, without limitation, KTech Telecommunications, Inc., Terayon Communications Systems, Inc., Wegener Communications, Inc., Scientific-Atlanta, Inc., Sencore, Inc., Thomson, Inc., Harris Corporation, Axcera, LLC, and Larcan, Inc.

39. "ATSC-Compliant Devices" means and includes all digital television equipment compliant with the ATSC Digital Television Standard, or hardware or software components used in such equipment, manufactured, sold, leased, or offered for sale to or used by any of the Multiple System Operators or Broadcasters.

40. The "ATSC Digital Television Standard" means and includes the ATSC's Digital Television Standard A/53 or any portion thereof adopted by the FCC.

41. "ATSC-Compliant Digital TV Signals" means and includes signals that are generated in compliance with the requirements for terrestrial broadcast signals described in the ASTC Digital Television Standard including, but not limited to, Section 4 of Annex D of the ATSC Digital Television Standard A/53.

42. "Grand Alliance" means and includes the group or entity that collaborated to develop a prototype of a digital television system from which the ATSC Digital Television Standard was initially established.

43. "ATSC Patents" means patents which, if not licensed, would be infringed or you believe would be infringed by the implementation of the ATSC Digital Television Standard.

## INSTRUCTIONS

1. All documents that you produce shall be organized and produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

2. If you are unable to comply with a demand for any document in full, you are requested to specify, pursuant to Federal Rule of Civil Procedure 34, whether your inability to comply is because the document has never existed, has been destroyed, has been lost, misplaced or stolen, and/or has never been, or is no longer in your possession, custody, or control. The statement shall set forth the name and address of any person or organization known, or believed by you, to have possession, custody, or control of the document.

3. To the fullest extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure, each request shall be deemed continuing so as to require further and supplemental production if you receive, discover, become aware of, or create additional responsive documents subsequent to the date of your response to these document requests.

4. If you object to or otherwise refuse to comply with any portion of a document request, please (i) state the objection or reason for such refusal, and (ii) provide all information called for by that portion of the document request to which you do not object or which you do not decline to answer as follows:

   a. If you object to a document request on the ground that it is too broad (i.e., you believe it calls for information or documents some of which are not relevant to

any claim or defense and will not provide leads to admissible evidence), you shall answer that document request by providing as many documents as you admit are relevant or likely to lead to the discovery of relevant information;

b. If you object to a document request on the ground that to respond would constitute an undue burden, then you shall respond as fully as possible without undertaking such asserted undue burden; and

c. If you object to any portion of a document request on the ground that it is vague or indefinite, you shall set forth your good faith understanding of the allegedly vague or indefinite term and shall then respond to the document request based upon that stated understanding.

5. If any document requested herein is claimed to be privileged or otherwise withheld, in whole or in part, you must identify each document and provide the following information:

a. Identification of the person who created, wrote, or prepared the document and, if applicable, the person to whom the document (or copies of it) was sent;

b. Date on which the document was created, written, prepared, and/or transmitted;

c. Description of the nature of the document (e.g., letter, e-mail, memorandum);

d. Description of the subject matter of the document;

e. Number of pages the document contains; and

f. Whether the document is privileged or otherwise withheld, and why the document is privileged or withheld.

6. Each request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever, in the possession, custody, or control of you or your respective agents or attorneys. You are specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

7. Unless otherwise specified, the time period covered by each individual document request herein is June 26, 1990 to the present.

8. This subpoena does not call for the production of any documents or things, including source code, that you have already produced to Rembrandt or deposited into escrow in the case of *Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:05-443 (E.D. Tex.) ("*Comcast I*") , provided that you agree or have agreed that the Parties to the MDL Litigation may used the documents or things, including source code, so produced or deposited for all purposes in connection with all of the actions comprised in the *Rembrandt* MDL Litigation, subject to the terms and conditions of any Protective Orders in effect in *Comcast I* or in the *Rembrandt* MDL Litigation.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Please produce the following documents pursuant to Fed. R. Civ. P. 45:

1. All documents that you produced pursuant to any previously served subpoena in a Related Action, including *Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:05-443 (E.D. Tex.).

2. All documents concerning any past, existing, or proposed agreements with any one or more of the MSO Defendants.

3. Documents sufficient to determine the extent to which DOCSIS-Compliant Devices are used by the MSO Defendants or their customers in the MSO Defendants' cable networks.

4. All documents concerning communications between CableLabs and any MSO Defendant or Equipment Vendor Defendant regarding DOCSIS-Compliant Devices,

including all applications or submissions for DOCSIS Certification; any documents submitted in connection therewith; any documents provided by you to any MSO Defendant or Equipment Vendor Defendant in connection with any such application or submission; and any correspondence concerning any such application or submission.

5. All documents relating to Rembrandt, including but not limited to communications between CableLabs and any Defendant regarding Rembrandt.

6. All documents and communications relating to the creation and/or adoption of all versions and drafts of the Specified DOCSIS Sections.

7. All documents mentioning or concerning any of the Patents-in-Suit, their applications, or the named inventors of the Patents-in-Suit.

8. All documents concerning your knowledge of any of the Patents-in-Suit, including documents indicating when and how you became aware of any of the Patents-in-Suit.

9. Documents, including source code, design documents, interface or product specifications, flowcharts, models, drawings, promotional literature, advertising, engineering, design, engineering analysis and testing, user manuals, instruction manuals, catalogs, and operation documents for every DOCSIS-Compliant Device. For each DOCSIS-Compliant Device, this request includes, but is not limited to, any materials (including software) provided to or collected by CableLabs in connection with any application or submission for DOCSIS Certification; all documents concerning any testing, evaluation, or analysis performed by CableLabs or by any cable company, broadband service provider, or other third party involved in any DOCSIS Certification testing; any materials considered by CableLabs in connection

with any application or submission for DOCSIS Certification; and any documents prepared for, reviewed at, or reflecting any CableLabs' Certification Board's consideration of any application or submission for DOCSIS Certification of any such DOCSIS-Compliant Device.

10. Documents sufficient to show how each DOCSIS-Compliant Device meets the requirements of each Specified DOCSIS Section or performs each Specified DOCSIS Functionality.

11. All documents concerning any analysis, opinion, or inquiry regarding potential infringement of any of the claims in the Patents-in-Suit, including any documents concerning or relating to investigations performed by or on behalf of you, your partners, your licensors, your members, and/or your affiliates, related to the potential infringement of the Patents-in-Suit by any DOCSIS-Compliant Device.

12. All correspondence with counsel and other documents expressing opinions on or concerning the validity, invalidity, infringement, non-infringement, enforceability, non-enforceability, or license (either express or implied) as to any of the Patents-in-Suit.

13. All documents relating to any communications with your representatives, members, the press, any news wire, or any other third-party concerning any of the Patents-in-Suit, Rembrandt, Remstream, or the *Rembrandt* multi-district litigation or Related Actions. This request includes, but is not limited to, any communications with any Defendant.

14. All documents concerning any analysis or efforts by you to design any products or any Specified DOCSIS Section around the Patents-in-Suit.

15. All documents that refer or relate to any prior art reference that you believe anticipate or render obvious any of the 8 Patents.

16. All documents and communications evidencing or suggesting that CableLabs or any of the Defendants knew or had reason to know about the Patents-in-Suit, Rembrandt, or Remstream.

17. All documents and communications evidencing or suggesting that CableLabs or any of the Defendants knew or had reason to know that any of the MSO Defendants or the Equipment Vendor Defendants lacked patent rights that are necessary to make, sell, use, or import equipment that operates in compliance with DOCSIS.

18. All documents and communications evidencing or suggesting any decision or policy by CableLabs or any of the MSO Defendants or the Equipment Vendor Defendants to refrain from identifying, searching for, or reviewing patents that are necessary to make, sell, use, or import equipment that operates in compliance with DOCSIS.

19. All documents and communications by CableLabs or any of the MSO Defendants or the Equipment Vendor Defendants concerning the applicability of the Patents-in-Suit to DOCSIS.

20. Documents sufficient to show when, why, how, and by whom CableLabs was formed.

21. Documents sufficient to show the financial relationship of each MSO Defendant and each Equipment Vendor Defendant with CableLabs, including all monies, capital, or intellectual property invested in or contributed to CableLabs; any equity interest in CableLabs held by any MSO Defendant or Equipment Vendor Defendant; and any loan to CableLabs from any MSO Defendant or Equipment Vendor Defendant.

22. All documents relating to the negotiation or execution of any agreement whereby CableLabs grants or licenses any patent rights that are necessary to make, sell, use, or import equipment that operates in compliance with DOCSIS, or provides a covenant not to sue under any such patent rights, to any of the Defendants, Sedna, or any other party.

23. All documents evidencing the strategic plans, development plans, and/or related business plans of the MSO Defendants or the Equipment Vendor Defendants involving CableLabs or DOCSIS.

24. Documents sufficient to show the structure, organization, personnel, and operation of CableLabs from the date of its creation to the present.

25. Documents sufficient to show all persons and/or entities that have ever been equity owners of, members of, or affiliated with CableLabs from the date of its creation to the present.

26. Documents sufficient to show all persons and/or entities on CableLabs' Board of Directors, Executive Committee, and/or Technical Advisory Committee from the date of CableLabs' creation to the present.

27. Documents sufficient to show how persons and/or entities become members of CableLabs, its Board of Directors, its Executive Committee, and its Technical Advisory Committee from the date of CableLabs' creation to the present.

28. All documents concerning any existing or proposed business agreements with the MSO Defendants or the Equipment Vendor Defendants, including documents sufficient to show all services ever offered or performed by CableLabs for any one or more MSO Defendant or Equipment Vendor Defendant.

29. All documents concerning all policies, rules, and procedures relating to the development or adoption of DOCSIS 1.0, DOCSIS 1.1, DOCSIS 2.0, and DOCSIS 3.0.

30. Documents sufficient to establish the identities of the persons responsible for the development and adoption of the Specified DOCSIS Sections, including organizational charts for the time periods when each of the DOCSIS Specifications was conceived, developed, and adopted.

31. All documents concerning the development and adoption of the Specified DOCSIS Sections, including all drafts of each Specified DOCSIS Section.

32. All documents concerning all technologies considered during the development and adoption of the Specified DOCSIS Sections.

33. All documents concerning why each of the particular technologies adopted in the Specified DOCSIS Sections was chosen over other technologies.

34. All documents concerning the testing done with respect to the Specified DOCSIS Sections.

35. All documents concerning patent searches with respect to the development and adoption of the Specified DOCSIS Sections.

36. All documents concerning the promotion and marketing of each of the DOCSIS Specifications.

37. Documents sufficient to determine the identity of all persons who are parties to your royalty-free pool for intellectual property rights essential for implementation of each of the DOCSIS Specifications.

38. All documents concerning your royalty-free pool for intellectual property rights essential for implementation of each of the DOCSIS Specifications, including, without limitation, documents sufficient to identify all patents included in such pool, and all agreements relating to such patents.

39. All documents concerning the procedure for obtaining a license for the intellectual property contained in your royalty-free pool for intellectual property rights essential for implementation of each of the DOCSIS Specifications.

40. All documents concerning communications between you and any persons who refused to join or contribute intellectual property to your royalty-free pool for intellectual property rights essential for implementation of each of the DOCSIS Specifications.

41. All documents concerning your procedures for DOCSIS Certification under the DOCSIS Specifications, including guidelines, test plans, test requirements, implementation conformance statements, component checklists, test execution packages, test tools, and test scripts.

42. All documents concerning the testing or evaluation of any modems for compliance with the Specified DOCSIS Sections or their performance of the Specified DOCSIS Functionality.

43. All documents and communications concerning any ATSC-Compliant Device that is manufactured, purchased, or used by Sharp, any MSO Defendant, or any Broadcaster Defendant, including without limitation documents evidencing the manner or extent to which any such ATSC-Compliant Device has been used or tested for transmission, reception, and/or retransmission of digital television signals. This request includes,

but is not limited to, requests for proposals, schematics, and specifications relating to each such ATSC-Compliant Device.

44. Documents evidencing the structure, function, and operation of the ATSC-Compliant Devices that you have operated, tested, or evaluated, including whether and how the ATSC-Compliant Devices transmit, receive, encode, or decode ATSC-Compliant Digital TV Signals, including, without limitation, documents related to encoding of Reed-Solomon symbols, Trellis encoding, interleaving algorithms, modulation, demodulation, Viterbi decoding, decoding of Reed-Solomon symbols, and de-interleaving algorithms utilized within the ATSC Compliant Devices.

45. All documents relating to your involvement in the development or testing of terrestrial transmission for digital television, including but not limited to development or testing related to the ATSC Digital Television Standard, and all documents related to any testing or evaluation of (i) any equipment to correct for or minimize the effect of burst errors in the broadcast transmission of digital television signals; (ii) forward error correction techniques for terrestrially transmitted digital television signals, including those for use in the ASTC Digital Television Standard; and (iii) any equipment or techniques that were proposed for the RF/Transmission subsystem of the ASTC Digital Television Standard but were not adopted.

46. All Documents relating to any evaluation or testing by you of equipment that satisfies the RF/Transmission Characteristics of the ATSC Digital Television Standard.

47. All documents relating to any evaluation or testing of any receivers that were intended to receive signals transmitted by an ATSC-Compliant Device.

48. All documents comprising communications between you and the FCC, the FTC, or any other regulatory agency, foreign or domestic, regarding the ATSC-Compliant Devices or the ATSC Digital Television Standard.

49. All documents comprising communications between you and AT&T or any other person regarding licensing patents essential to DOCSIS or the ATSC Digital Television Standard.

50. All documents relating to the '627 patent.

51. All documents and communications concerning the Grand Alliance and the ATSC Digital Television Standard, including any documents or communications relating to your relationship with the Grand Alliance or its members in their role as part of the Grand Alliance, and any communications with any MSO Defendant, Broadcaster Defendant, or Sharp related to the Grand Alliance or the ATSC Digital Television Standard.

# EXHIBIT B

## Modems

A. Ambit Microsystems Modems

1. 60194E
2. 60678E
3. 60678EU
4. U10C018
5. U10C019
6. U10C020

B. Arris Interactive Modems

1. TM402G
2. TM402P
3. TM502A
4. TM502G
5. CM450

C. Cisco Modems

1. ECM715
2. UBR7246
3. UBR7246 VXR
4. UBR10000
5. UBR10012

D. D-Link Modems

1. DCM 202

E. Linksys Modems

1. BEFCMU10
2. BEFCMU10 v.3
3. BEFCMU10 v.4
4. WCG200
5. WCG200v2

F. Motorola Modems

1. DM100
2. SB3100
3. SB3100D
4. SB4100
5. SB4101
6. SB4200
7. SB4220
8. SB5100
9. SB5101
10. SB5120
11. SBG900
12. SBV4200
13. SBV5120
14. SBV5121
15. SBV5121XM
16. SBV5220

G. NETGEAR Modems

1. CG814WG v2

H. Scientific-Atlanta, Inc. Modems

1. DPC2100
2. DPC2100R2
3. DPC2203
4. DPC2203C
5. DPX100
6. DPX110
7. DPX2100
8. DPX2203

I. Terayon Communications Systems Modems

1. ECM615
2. ECM715
3. ECM715X
4. TJ715X

J. Thomson Modems

1. DCM105
2. DCM205
3. DCM245/245R
5. DCM305
6. DCM315
7. DCM325
8. DCM425
9. DHG535

K. Toshiba Modems

1. PC1100U
2. PCX1100
3. PCX1100U
4. PCX2000
5. PCX2200
6. PCX2500
7. PCX2600

## CMTS DEVICES

A. Arris Interactive CMTS Devices

1. C4

B. BigBand Networks Inc. CMTS Devices

1. Cuda 3000
2. Cuda 12000

C. Cisco CMTS Devices

1. UBR7246
2. UBR7246 VXR
3. UBR10000
4. UBR10012

D. Motorola CMTS Devices

1. BSR2000
2. BSR64000