# EXHIBIT 10

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209
(202) 326-7900
FACSIMILE:
(202) 326-7999

March 17, 2009

***Via Electronic Mail***

Mary ("Mindy") V. Sooter
Faegre & Benson LLP
1900 Fifteenth Street
Boulder, CO 80302

Re: *In re Rembrandt Technologies, L.P., Patent Litigation*, 07-md-1848-GMS (Eight Patent Litigation)

Dear Mindy:

I write to memorialize our meet and confer on March 11, 2009 regarding Rembrandt's Rule 30(b)(6) deposition subpoena of CableLabs (the "Subpoena").

**CableLabs' Objection to Topics 2, 3, 9, 10, and 11.** In its response to the Subpoena, CableLabs objected to designating a Rule 30(b)(6) witness on deposition Topics 2, 3, 9, 10, and 11 because former CableLabs employee Dorothy Raymond had already testified to some extent on those Topics. *See* Letter from M. Sooter to M. Joffre (March 11, 2009). During the meet-and-confer, CableLabs stood by this objection.

CableLabs' position is baseless and prejudicial to Rembrandt. *First*, CableLabs did not designate Raymond as its 30(b)(6) witness, and she was not prepared to testify as a 30(b)(6) witness but rather testified in her personal capacity. *Second*, there is no legal basis in the Federal Rules of Civil Procedure, or anywhere else, for CableLabs' position that a corporate deponent can refuse to answer questions under Rule 30(b)(6) because previous individual witnesses had testified on similar subjects in their personal capacities. To the contrary, CableLabs' position undermines the purposes of Rule 30(b)(6). *See Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1732369, at *3-*4 (D. Kan. June 11, 2007). *Third*, Raymond testified that she did not know or did not recall answers to many questions posed by Rembrandt. Such answers are unacceptable at a Rule 30(b)(6) deposition, and Rembrandt is entitled to receive CableLabs' answers to questions related to the Topics in the Subpoena. *Fourth*, even on those subjects for which Raymond was able to provide some testimony, Rembrandt did not ask her all the questions it would ask CableLabs in its corporate capacity. *Fifth*, although CableLabs produced only approximately 100 documents related to Raymond before her deposition, and despite representations by counsel that these were all or substantially all documents related to Raymond, after the Raymond deposition CableLabs produced over *800* additional documents related to her. Therefore, Rembrandt was unable to conduct a complete deposition of Ms.

Raymond. *Finally*, prior to the Raymond deposition, CableLabs was well aware that Rembrandt intended to depose CableLabs pursuant to Rule 30(b)(6), and it therefore could have notified Rembrandt ex ante that it intended to designate Raymond as a 30(b)(6) witness instead of attempting to do so now ex post. Indeed, Rembrandt served a Rule 30(b)(6) deposition subpoena to CableLabs on July 17, 2008. While Rembrandt did not conduct the deposition pursuant to that subpoena, it stated the following to CableLabs in a letter dated September 22, 2008: "Finally, we wanted to reiterate that, as we previously have discussed, Rembrandt intends to re-notice a Rule 30(b)(6) deposition of CableLabs at a mutually agreeable date after CableLabs has produced, and Rembrandt has had the opportunity to review, documents responsive to the document subpoena." *See* Letter from J. Heisman to M. Sooter (Sept. 22, 2008).

Although Rembrandt is prepared to seek a judicial remedy, in the interest of attempting to work out a mutually-acceptable position prior to going to the Court, Rembrandt agreed during the meet-and-confer to provide examples where Raymond's deposition did not fully address the Topics noticed in the Subpoena and examples where Raymond's memory was deficient or where she did not have knowledge as would be required for a 30(b)(6) witness. Importantly, Raymond made clear during her deposition that her testimony covered only the timeframe when she was employed as the General Counsel of CableLabs, which does not cover the entire relevant period at issue in this case. *See* Tr. 29:3-7. This alone makes her testimony inadequate for purposes of Rule 30(b)(6). Furthermore, CableLabs has clawed back many of the documents relevant to Raymond's involvement with DOCSIS, the patent pool, and the DOCSIS License Agreement, which makes questioning CableLabs on those Topics all the more important. And during Raymond's deposition, CableLabs took custody of several documents that are *not* on CableLabs' privilege log, which indicates that the documents should not have been taken, and Rembrandt should have been permitted to ask Raymond about them.

In any event, Ms. Raymond was unable to answer numerous questions that are the subject of Topics 2, 3, 9, 10, and 11 – questions as to which Rembrandt is entitled to an answer under Rule 30(b)(6). For example, Raymond could not testify regarding:

- whether any of the MSO Defendants have licensed any of CableLabs' patents, Tr. 61;
- Raymond did not know whether CableLabs was a licensee of any third-party patents other than ones discussed during the deposition, Tr. 78;
- Raymond could not recall if CableLabs "ever sold any patents," Tr. 81;
- Raymond did not "believe" that "CableLabs ever purchased any patents," but could "only speak to the period that [she] was general counsel," Tr. 81;
- Raymond could not recall "what CableLabs did to determine who owned intellectual property in the specifications," Tr. 137;

- Raymond could not "answer whether [a list of patents in the DOCSIS pool] was ever created or not," Tr 147;
- Raymond could not recall whether MCNS "conducted or had conducted a search for all patents that are essential to the [DOCSIS] spec," Tr 182;
- Raymond could not recall "any communications with the vendor authors regarding whether a patent search should be conducted" in connection with DOCSIS, and couldn't recall if "the vendor authors want[ed] a patent search to be conducted," Tr. 185.
- Raymond "believed" but could not "recall" whether the DOCSIS Instructions have "changed over time," Tr. 221.

In addition, there are many subjects related to Topics 2, 3, 9, 10, and 11 that Rembrandt did not address with Raymond, including:

- **Topic 9(d)** – Alternatives to the royalty-free arrangement for DOCSIS that were considered;
- **Topic 9(h)** – How CableLabs maintains the DOCSIS patent pool;
- **Topic 10(c)** – CableLabs' understanding of the meaning of the DOCSIS License agreement;
- **Topic 10(f)** – The disclaimers that are included in the DOCSIS License Agreement;
- **Topic 11(a)** – The process of drafting the Instructions for the DOCSIS License Agreement;
- **Topic 11(c)** – CableLabs' understanding of the Instructions for the DOCSIS License Agreement;

There are many subjects related to Topics 2, 3, 9, 10, and 11 that Rembrandt did not fully explore with Raymond, including:

- **Topic 3** – Rembrandt did not have the opportunity to ask all relevant questions of Ms. Raymond regarding CableLabs' licensing and sublicensing agreements and practices;
- **Topic 9(e)** – Rembrandt did not have the opportunity to ask all relevant questions of Ms. Raymond regarding communications about the DOCSIS patent pool";
- **Topic 9(f)** – Rembrandt did not have the opportunity to ask all relevant questions of Ms. Raymond regarding the "coverage of the DOCSIS patent pool" *after* its initial set-up for version 1.0;

- **Topic 9(g)** – Rembrandt did not have the opportunity to ask all relevant questions of Ms. Raymond regarding "representations made by CableLabs to CableLabs members, DOCSIS patent pool members, and other third parties about the DOCSIS patent pool";
- **Topic 10(a)** – Rembrandt did not have the opportunity to ask all relevant questions of Ms. Raymond regarding the process of drafting the DOCSIS License Agreement;
- **Topic 10(e)** – Raymond testified that the DOCSIS License Agreement had been amended and explained the amendment process, *see* Tr. 231-232, but she did not address any substantive "changes that have been made to the Agreement over time";
- **Topic 11(d)** – Rembrandt did not have the opportunity to ask all relevant questions of Ms. Raymond regarding communications about the Instructions to the DOCSIS License Agreement;

These examples — although there are many more — are more than sufficient to establish that, even if CableLabs had properly designated Raymond as a Rule 30(b)(6) witness (which it did not), Rembrandt was not afforded an adequate opportunity to obtain CableLabs' corporate testimony regarding Topics 2, 3, 9, 10, and 11 for the purposes of Rule 30(b)(6). Please notify Rembrandt by Friday, March 20, 2009, whether CableLabs intends to designate and produce a witness for these Topics. If CableLabs stands by its objection, Rembrandt will have no other option but to seek a speedy judicial resolution.

**CableLabs' objection to Topics 6, 8(a), 8(c), 22 and 23.** CableLabs objected that it does not have knowledge on Topics 6, 8(a), 8(c), 22 and 23. *See* Letter from M. Sooter to M. Joffre (March 11, 2009). With respect to Topics 6 and 8(c), CableLabs explained during our call that it believed these Topics addressed the actual costs incurred by the Equipment Vendors in building cable modems and CMTS devices. Rembrandt clarified that these Topics address CableLabs' understanding of the actual and projected costs of complying with the DOCSIS specifications; that is, how much the new requirements in each successive version of DOCSIS cost to implement, whether in the design and manufacturing of new modems, or in the updating and modification of deployed modems. Documents indicate that CableLabs has knowledge on this topic. For example, in a CableLabs presentation dated August 15, 2001, on the subject of expanding the bandwidth of the physical layer, CableLabs lists the "Non Technical COST Issues" of doing so, including "Costs start with 50,000 extra gates, clock recover ($0.15 at 1.8 micron)," "Chip integration, size of CMTS," "Conversion and complexity management costs of each," "Reliability costs – want five 9's in CMTS," and others. *See* CL 04818; *see generally* CL 04800-04848.

With respect to Topic 8(a), Rembrandt expects CableLabs to testify, to the extent it has knowledge, regarding the subcategories of costs listed.

With respect to topics 22 and 23, CableLabs agreed that it would determine the level of its knowledge on each sub-topic, and would produce a witness on those sub-topics for which it has knowledge.

**CableLabs' objection to Topic 18.** CableLabs objected to Topic 18 as vague and confusing. *See* Letter from M. Sooter to M. Joffre (March 11, 2009). Rembrandt explained during our call that this Topic relates to information CableLabs has about the MSOs' upstream and downstream bandwidth constraints. Numerous documents in CableLabs' production address this Topic. Running simple search terms, such as "upstream bandwidth," against CableLabs' production would yield many of these documents. Rembrandt expects CableLabs to testify, to the extent it has knowledge, regarding this topic.

**CableLabs' objection to Topics for which it has produced documents.** CableLabs objected to preparing for several Topics because it has produced documents on those Topics. Rembrandt explained that a Rule 30(b)(6) deponent cannot object to preparing a witness on a Topic just because it has produced documents relevant to that Topic. CableLabs must prepare a witness to testify on the noticed Topics, even if it has produced documents related to those Topics.

**CableLabs' objection to Topics 1 and 4.** Rembrandt clarified that it does not expect CableLabs to testify about *each* communication between CableLabs and the Defendants and AT&T. However, in addition to what CableLabs agreed to testify about in its response to the Subpoena, Rembrandt expects CableLabs to describe the functionality and features desired by the Defendants on cable modems and CMTSs and the communications by which the Defendants made their wishes known.

**CableLabs' objection to Topic 5.** CableLabs objects to providing a witness on "any" fees or contributions made to CableLabs' by "any" specific MSO. In addition to what CableLabs agreed to testify about in its response to the Subpoena, CableLabs and Rembrandt agreed that, with respect to specific amounts, CableLabs need only testify to a reasonable level of detail. Rembrandt would also accept CableLabs' identification of documents where Rembrandt could find the amount of membership fees, capital infusions, or other contributions made to CableLabs by the MSO Defendants, and the bases for such contributions.

**CableLabs' objection to Topic 7.** As with Topics 8(a) and 8(c), *supra*, Rembrandt explained that this Topic does not address the total costs incurred by the Equipment Vendors to build cable modems and CMTSs, but rather the costs of modifying and revising those devices in response to each successive version of DOCSIS. Rembrandt explained that this Topic also addresses the costs associated with the development of each version of DOCSIS; that is, the type of costs, and actual costs, incurred by CableLabs in developing DOCSIS 1.0, 1.1, 2.0, and 3.0.

**CableLabs' objection to Topic 8(b).** As with Topic 5, Rembrandt agreed that if CableLabs' 30(b)(6) witness could not specify the precise dollar amounts, then Rembrandt would accept the identification of documents where Rembrandt could find the costs charged by and incurred by CableLabs to test and certify whether cable modems and CMTSs are DOCSIS compliant.

**CableLabs' objection to Topics 12, 13, 15, and 16.** While CableLabs agreed to testify "generally" regarding these Topics, for the subjects listed in sub-topics 16(e)-(f), Rembrandt expects CableLabs to provide specific testimony why CableLabs included the listed sections in DOCSIS. CableLabs agreed to investigate this issue. Also, the documentation called for in Topic 15 falls squarely within several document requests, and Rembrandt expects the witness to be able to discuss specific examples of the documentation produced or received by CableLabs for certification testing. Therefore, Rembrandt still expects CableLabs to bring and explain examples of such documents, or, at a minimum, to identify those documents in the CableLabs' production prior to the deposition so that Rembrandt can be prepared with copies at the deposition.

**CableLabs' objection to Topics 14, 22, and 23.** For Topic 14, CableLabs believes that it is "impossible" to provide a witness to testify regarding "all cable modem and CMTS devices" CableLabs has ever tested for compliance with DOCSIS 1.1, 2.0, and 3.0. Rembrandt noted during our call that it would accept a documented list of these devices (with the dates or certification waves when the devices were certified or qualified), and CableLabs agreed to search for and consider providing such a list. With respect to Topics 22 and 23, CableLabs agreed that it will consider whether, instead of testifying about each specific cable modem listed in response to Topic 14, it is possible to testify about groups of modems that function similarly. Also, CableLabs explained that it does not have knowledge about every sub-topic listed under Topics 22 and 23, which Rembrandt will accept so long as CableLabs makes a thorough investigation to determine the level of its knowledge on each sub-topic. CableLabs agreed to make this investigation.

**CableLabs' objection to Topics 17, 19, 20, and 21.** CableLabs objects to providing a witness to testify regarding specific employees, communications, or meetings called for in Topics 17, 19, 20, and 21. With regard to Topic 17, in lieu of direct testimony, Rembrandt would accept the identification of documents where Rembrandt could find the specific employees, communications, and meeting information called for by this Topic. But where there is no such documentation, Rembrandt expects CableLabs to provide a witness able to testify about the extent of CableLabs' knowledge.

With respect to Topic 19, even though CableLabs may not be able to provide testimony on "[a]ll communications and meetings" involving the listed sections of DOCSIS, Rembrandt expects CableLabs to provide testimony on the communications and meetings it does know about, especially significant meetings regarding these provisions of DOCSIS.

With respect to Topic 20, Rembrandt expects CableLabs to testify regarding the author, origin, drafting, and revision of the listed DOCSIS sections.

Finally, with respect to Topic 21, Rembrandt expects CableLabs to testify about which of the listed DOCSIS specifications a cable modem or CMTS must comply with in order to be certified or qualified as DOCSIS compliant.

* * * * *

I am able to discuss any of the foregoing at your convenience.

Regards,

Michael Joffre