**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-CV-00691-WEM-KLM

**REMBRANDT TECHNOLOGIES, LP, et al**
**Plaintiffs,**

**v.**

**COMCAST CORPORATION, et al,**
**Defendants,**

**CABLE TELEVISION LABORATORIES, INC.**
**Movant**

---

**CABLE TELEVISION LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS <u>AMENDED</u> MOTION TO QUASH REMBRANDT TECHNOLOGIES, LP'S SUBPOENA OR ALTERNATIVELY FOR A PROTECTIVE ORDER**

---

Cable Television Laboratories, Inc. ("CableLabs") submits this reply memorandum in further support of its amended motion for an order quashing Rembrandt Technologies, LP's ("Rembrandt") April 1st 2009 subpoena (the "April 1st Subpoena"), or alternatively for a protective order modifying the subpoena.

## INTRODUCTION

Rembrandt seeks discovery from non-party CableLabs as if CableLabs were a party in the underlying action. Having already deposed CableLabs' employees for three days, Rembrandt asserts that it should be entitled to five more days of depositions on topics on which it has already obtained extensive discovery. Rembrandt's request should be denied. Rembrandt made no effort to "take reasonable steps to avoid imposing undue burden or expense" on non-party

CableLabs, as required. Moreover, Rembrandt's April 1st Subpoena will require CableLabs to prepare up to five separate witnesses. If Rembrandt is permitted to depose each witness for a full day, CableLabs would be required to submit to eight days of deposition testimony—twice as many days as Rembrandt has taken from each of the thirteen defendants.

Rembrandt's request to re-depose CableLabs on numerous licensing-related topics (Topics 2, 3, 4, 9, 10 and 11, the "Licensing Topics") should be denied because Rembrandt has already deposed the person most knowledgeable about CableLabs' licensing practices and CableLabs has agreed to be bound by her testimony. Moreover, it is clear that there are less burdensome avenues available to obtain the information Rembrandt seeks—including from the documents already produced by CableLabs or directly from the parties in this case. To the extent that the Court determines that Rembrandt is entitled to a 30(b)(6) deposition of CableLabs, the Court should narrow the topics and limit testimony to seven hours.

## ARGUMENT

### I. Rembrandt Failed to Satisfy Its Obligation to Minimize the Burden on a Non-Party

Because CableLabs is not a party to the underlying lawsuit, Rembrandt has a heightened duty to minimize the burden of discovery on CableLabs. *Myers v. Mid-West Nat. Life Ins. Co.*, 2008 WL 2396762, at *1 (D. Colo. 2008) ("Courts are required to balance the need for discovery against the burden imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party is a factor which weighs against disclosure.") (Mix, J.); *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir.1993). Rembrandt failed to provide CableLabs notice of the deposition topics until after Ms. Raymond's

deposition. Rembrandt therefore deprived CableLabs of any opportunity to seek to combine the two depositions or otherwise minimize its costs.

Rembrandt implies that because CableLabs is a non-profit member organization, its members are Multiple Systems Operators ("MSOs"), and many MSOs are defendants in the underlying lawsuit, CableLabs is essentially a party to the underlying case. Rembrandt offers no authority for this creative argument, and it should be rejected. CableLabs is a non-stock member corporation and is not legally "owned" by the MSOs. The simple, undisputed fact is that CableLabs is not a named party, and the burden and cost to it must be minimized.

Moreover, even if Rembrandt's description of CableLabs' relationship with the MSOs were accurate, that argument would support CableLabs' arguments, not Rembrandt's. If indeed, the MSOs controlled every aspect of CableLabs' business—which they do not—then there would be no need to engage CableLabs in any discovery because all discovery could be obtained directly from the MSOs. In short, Rembrandt merely seeks to characterize CableLabs as a pseudo-party in order to avoid its fundamental duty to minimize the burden on CableLabs.

## II. Dorothy Raymond's Prior Deposition Testimony Satisfies CableLabs' Rule 30(b)(6) Obligation with Respect to Topics 2, 4, 3, 9, 10 and 11 of the April 1st Subpoena

Rembrandt's request to re-depose Ms. Raymond (Dkt. No. 16, Op. Br. at 9) should be denied. Rembrandt does not cite a single case where a non-party was required to re-produce a witness who had already testified extensively on the subjects set forth in a subsequent Rule 30(b)(6) deposition, and where the non-party agreed to be bound by the witnesses' prior testimony on those subjects. As set forth in *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159 (D. Del. 2001), CableLabs' offer to be bound by Ms. Raymond's testimony satisfies its

"obligation under Rule 30(b)(6) to produce a witness" to testify regarding the Licensing Topics. *Id.* at 162–63.

Not only can prior testimony be designated by a corporation to satisfy Rule 30(b)(6), but doing so is "most appropriate" when "the prior witness is the most knowledgeable on the subject and has been previously deposed by opposing counsel with regard to that topic." *Requa v. C.B. Fleet Holding Company, Inc.*, No. 04-cv-00396, 2007 WL 2221146, at *2 (D. Colo. 2007). Here, Ms. Raymond is the most knowledgeable person on the Licensing Topics. (*See* Attached Declaration of Jud Cary ("Cary Decl."), at ¶ 15.) A Rule 30(b)(6) deposition on those topics would merely retread ground already covered in Ms. Raymond's prior deposition.

Rembrandt's reliance on *LaSalle National Associates v. Nomura Asset Capital Corp.*, No. 03 C 4065, 2003 WL 21688225 (N.D. Ill. July 16, 2003), is misplaced. In *LaSalle*, the plaintiff deposed an individual personally, and subsequently subpoenaed a non-party corporation which identified that individual as its Rule 30(b)(6) designee and moved to quash the subpoena. *Id.* The court denied the motion because the non-party corporation <u>refused</u> to be bound by the designee's testimony and the plaintiff had not yet obtained deposition testimony on particular subjects. Likewise, none of the parties in Rembrandt's other cited cases offered to designate the individual deposition testimony as the testimony of the company.

CableLabs already offered deposition testimony on these topics, and CableLabs offered to be bound by this testimony. It is undisputed that Dorothy Raymond—CableLabs' former General Counsel and current outside counsel—is the most knowledgeable person regarding the Licensing Topics. It is further undisputed that Ms. Raymond testified already regarding each of the Licensing Topics (Dkt. No. 10, CableLabs Mem. at 11-12) and that non-party CableLabs has

offered to be bound by Ms. Raymond's testimony with regards to the Licensing Topics (Dkt. No. 10-11, CableLabs Mem., Ex. 11). Accordingly, the decision in *LaSalle* is inapplicable to the instant situation.

Rembrandt's remaining arguments that it should be entitled to a second deposition of Ms. Raymond are similarly without merit. First, Rembrandt contends that "CableLabs did not prepare Ms. Raymond as a Rule 30(b)(6) witness" (Dkt. No. 16, Op. Br., at 11) and that Ms. Raymond was not knowledgeable regarding the Licensing Topics. CableLabs, however, is only required to "prepare" a witness to the extent that the company has in its possession information which the witness does not already know. *Miller v. Union Pacific R. Co.*, 2008 WL 4724471, at *3 (D. Kan. 2008) (holding that the witness must review "all matters known or reasonably available" to the corporation.). That is not the case here. Ms. Raymond was the in-house attorney at CableLabs in charge of licensing for over fifteen years—from 1991 through January 2007—and is a consultant to CableLabs on licensing and other issues to this day. (*See* Cary Decl., at ¶ 15.) Ms. Raymond is the <u>only</u> person at CableLabs who is knowledgeable about many of the Licensing Topics. (*See* Cary Decl., at ¶ 15.) That Ms. Raymond could not, from memory, recall the specific terms of a license or the amount of royalties paid under a particular license (Dkt. No. 16, Op. Br. at 16-17) is not evidence that Ms. Raymond was not properly prepared to testify regarding CableLabs' licensing practices.

Second, it is clear from Rembrandt's brief that a second deposition of Ms. Raymond covering Rembrandt's "ten targeted" topics will be nothing more than a memory test requiring Ms. Raymond to testify regarding specific terms of CableLabs licenses. *See e.g.* Dkt. No. 16, Op. Br. at 16 (indicating that Rembrandt seeks testimony regarding "what the license agreement

provided" and "other parties to the licenses, the royalty rate and royalty base, the structure of the royalty, the duration of the license, whether the licenses were exclusive, any sublicenses, any limitation of the scopes of the licenses"); Dkt. 16, Op. Br. at 17 ("She provided no testimony regarding the terms of the agreement, royalty provisions, the patents involved [or] the agreements duration"). CableLabs produced the licenses to Rembrandt. Rembrandt does not explain why it also needs Ms. Raymond's testimony regarding the terms of CableLabs' licenses. Less burdensome avenues clearly exist for obtaining the desired information, indeed Rembrandt already has the actual agreements that reveal this information.

Finally, Rembrandt's contention (Dkt. 16, Op. Br. at 19) that if Ms. Raymond is the most knowledgeable person "then it should not be burdensome to prepare her to testify" is baseless. As set forth above, Rembrandt seeks information with respect to the specific terms of CableLabs' licenses. Even assuming that CableLabs is required to produce a witness who had memorized the licenses (impossible), it would take a significant effort to prepare such a witness.

Accordingly, Rembrandt should not be entitled to take a second licensing deposition of CableLabs.

## III. The April 1st Subpoena Unduly Burdens Non-Party CableLabs and Should Be Quashed

Contrary to Rembrandt's accusation, CableLabs is not holding any information "hostage." CableLabs already produced three witnesses for Rembrandt to depose. It made no sense to commence additional depositions while the scope and duration is in dispute. Moreover, Rembrandt has not yet reduced the scope of the subpoena. Despite offering during negotiations to narrow some topics, the April 1st subpoena listed 23 topics <u>identical</u> to the 23 topics in Rembrandt's February 26th subpoena. If Rembrandt had indeed decided to narrow those topics

regardless of the outcome of the ongoing negotiations, then Rembrandt should have reflected those changes in scope in the April 1st subpoena, which was served after those negotiations. Instead, Rembrandt chose not to narrow the topics in the April 1st subpoena. It is those most-recently subpoenaed topics that are at issue here. In any event, as set forth below, Rembrandt's proposals do not meaningfully narrow the scope of its April 1st Subpoena or eliminate the burden on CableLabs.

**A. Topics For Which Documents Exist.**

While Rembrandt contends (Dkt. 16, Op. Br. at 21) that it is willing to accept documents in lieu of deposition testimony, it proposal is illusory. Rembrandt proposes to have CableLabs "identify[y] the specific documents that are responsive to each topic" only to then require CableLabs to "provide a witness who can authenticate the documents and answer any specific questions necessary to understand them and how they are response to the deposition topics." *Id.* (emphasis added). This is no compromise at all. Rather, Rembrandt's proposal seeks to have CableLabs do Rembrandt's work—reviewing CableLabs' production to identify relevant documents and providing Rembrandt with a list of those documents—and still subject CableLabs to a deposition on those documents. Rembrandt fails to offer any explanation regarding how its vague proposal to ask "specific questions" in any way limits the burden on CableLabs.

**B. Topics Regarding DOCSIS Technology and Its Costs**

CableLabs should not be burdened with preparing a witness to testify regarding the "costs of complying with the DOCSIS specifications; . . . whether in the design and manufacturing of new modems, or in the updating and modification of deployed modems." It is undisputed that CableLabs does not design, manufacture or modify any cable modems or other equipment in

response to different versions of DOCSIS. Nor is CableLabs involved in designing or developing the MSOs' systems that use those cable modems and equipment. CableLabs generally drafts discrete interface requirements; how products implement those requirements behind the interface is decided by the manufacturer. (*See* Cary Decl., at ¶ 11.) While Rembrandt has identified a few CableLabs documents that address this topic (and speak for themselves), Rembrandt does not explain why it cannot obtain this information from the EV and MSO defendants in this case who actually do design, manufacture, update and modify the equipment. This is clearly the less burdensome avenue. *LaSalle*, 2003 WL 21688225, at *1.

**C. Topic 15**

Rembrandt's contention that it is does not have knowledge of the CableLabs' testing documentation is baseless. Rembrandt's wholly-owned subsidiary subsidiary, Remstream, is a plaintiff in this case. Remstream partnered with Turbocomm and entered into the CableLabs DOCSIS patent pool. Remstream obtained a royalty-free license to the patents in the DOCSIS patent pool without (according to Rembrandt) incurring any obligation to contribute Rembrandt's patents, including the patents-in-suit, to the pool. Remstream produced substantial documentation demonstrating that it worked intimately with Turbocomm in order to obtain DOCSIS certification for Turbocomm's cable modems. Further, CableLabs produced extensive documentation regarding its testing of cable modems. Accordingly, Rembrandt should not be permitted to further burden non-party CableLabs with an oral deposition regarding information it already has in its possession. Furthermore, the equipment vendor defendants in the lawsuit should also be in possession of these documents. (*See* Cary Decl., at ¶ 14.) Therefore, this request is best satisfied by the parties—not by non-party CableLabs. Obviously, *multiple* "less

burdensome avenues exist for obtaining the desired information." *LaSalle*, 2003 WL 21688225, at *1.

## IV. Alternatively, the Court Should Modify the April 1st Subpoena to Limit Its Scope and the Duration of Depositions Taken Pursuant to It

The overbreadth and undue burden of Rembrandt's April 1st Subpoena is evidenced by the fact that is will require CableLabs to prepare and defend approximately five witnesses to testify regarding the more than 100 subtopics. Five days of depositions will likely require at least five days of preparation of the witnesses. That amount of deposition time would be not only expensive, but also quite disruptive to CableLabs' business. (*See* Cary Decl., at ¶ 17.)

Rather than minimize this burden on CableLabs, Rembrandt boldly asserts (Dkt. No. 16, Op. Br. at 23) that it should be entitled to depose non-party CableLabs for eight days—three days of previous personal depositions and five additional days of depositions in connection with its April 1st Subpoena. Notably, Rembrandt seeks double the amount of deposition time of CableLabs than it is scheduled to take for any of the thirteen defendants.[1] Rembrandt offers no argument why it should be entitled to twice as much discovery from non-party CableLabs.

Rembrandt's contention (Dkt. 16, Op. Br. at 24) that seven hours "is too short given the importance of CableLabs' testimony and its central role in this case" is baseless.[2] Rembrandt has not sued CableLabs. It has sued equipment vendors ("EVs") and MSOs, alleging that their

---

[1] For example, CableLabs understands that Rembrandt has served three Rule 30(b)(6) deposition notices on each of the six MSO defendants covering 78 topics and more than 150 subtopics. Many of these topics overlap the topics in Rembrandt's April 1st Subpoena. Rembrandt is scheduled to take no more than 4 days of depositions of each defendant in connection with all three deposition notices.

[2] Rembrandt's assertion (Dkt. 17, Op. Br. at 23) that it "has no intention of taking nearly that long and is willing to agree to a reasonable number of hours of total testimony" is of little comfort. Neither in its numerous meet-and-confers with CableLabs nor in its opposition brief has Rembrandt even hinted at what it believes is a "reasonable number of hours of total testimony."

products and services infringe patents owned by Rembrandt. It is undisputed that CableLabs is not involved in the design, development or manufacture of any cable equipment or the provision of any high-speed data or voice-over IP services. (*See* Cary Decl., at ¶ 12.) It is further undisputed that the DOCSIS specification is publicly available and that Rembrandt is in the process of obtaining testimony from each of the defendants regarding the DOCSIS specification and, more importantly, the actual functionality of the allegedly infringing products and services. Accordingly, the majority of the testimony sought from CableLabs is more easily and appropriately obtainable from the defendants in this case.

As set forth above, a seven-hour cap on any depositions permitted pursuant to the April 1st Subpoena would not be "arbitrary." Rather, it would require Rembrandt to do what it should have been doing throughout the discovery process—"take reasonable steps to avoid imposing undue burden or expense" on non-party CableLabs. Fed. R. Civ. P. 45(c)(1).

## CONCLUSION

For the reasons set forth herein and in CableLabs' opening brief, the April 1st Subpoena should be quashed. Alternatively the Court should modify the subpoena to permit CableLabs to discharge its obligations pursuant to the Licensing Topics by designating Ms. Raymond's previous testimony, limit the remaining topics as set forth in CableLabs' opening brief, and permit Rembrandt no more than seven hours to conduct any depositions necessitated by the April 1st Subpoena.

Dated: April 17, 2009

Respectfully submitted,

__s/ Mary V. Sooter___________

Natalie Hanlon-Leh
Mary V. Sooter
Katie R. Schwalb
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
(303) 607-3500
(303) 607-3600 (facsimile)

ATTORNEYS FOR CABLE TELEVISION LABORATORY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April 2009, I electronically filed the foregoing **CABLE TELEVISION LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS AMENDED MOTION TO QUASH REMBRANDT TECHNOLOGIES, LP'S SUBPOENA OR ALTERNATIVELY FOR A PROTECTIVE ORDER** with the Clerk of the Court using the ECF/CM electronic filing system which will send an electronic copy of this filing to the following counsel of record

Kevin B. Huff
Michael N. Nemelka
Kellogg, Huber, Hansen, Todd, Evans & Figel, P..L.L.C.
1615 M Street N.W. , Suite 400
Washington D.C. 20036
khuff@khhte.com
mnemelka@khhte.com

s/ Debbi J. Camp

**fb.us.3891674.06**