**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-CV-00691-WEM-KLM

**REMBRANDT TECHNOLOGIES, LP, et al**
**Plaintiffs,**

**v.**

**COMCAST CORPORATION, et al,**
**Defendants,**

**CABLE TELEVISION LABORATORIES, INC.**
**Movant**

---

**DECLARATION OF JUDSON D. CARY**

---

I, Judson D. Cary, state as follows:

1. I am the Vice President Video Technology Policy and Deputy General Counsel at Cable Television Laboratories, Inc. ("CableLabs"). I have been in this position since August 2001. Some of my responsibilities include licensing, corporate matters, and legal aspects of certification testing.

2. CableLabs is a non-stock member corporation. The Multiple System Operators ("MSOs") do not legally "own" CableLabs. Indeed, no company "owns" CableLabs.

3. CableLabs operates under the National Cooperative Research and Production Act in order to bring constituencies together to form common specifications for the benefit of the constituencies and the consuming public (e.g. in the form of lower prices).

4. CableLabs is a non-party nonprofit research and development consortium dedicated to pursuing new cable television technologies and defining interfaces between cable networks and cable devices connected to the network. The discrete interface requirements are set forth in specifications.

5. CableLabs facilitated the drafting of the Data Over Cable Service Interface Specification ("DOCSIS") specification. Many entities provided input to that drafting process, including industry experts, other standards bodies, Equipment Vendors ("EVs") and MSOs.

6. Rembrandt served four separate subpoenas on non-party CableLabs from December 2006 through August 2008. On September 22, 2008, Rembrandt provided CableLabs with a fifth "consolidated" subpoena. In response, CableLabs has already produced over 180,000 pages of documents to Rembrandt.

7. In December, 2008, Rembrandt served three additional subpoenas *ad testificandum* to current or former CableLabs employees: Dorothy Raymond (CableLabs former general counsel and current outside counsel), William Kostka (a current employee), and Carmela Stuart (a current employee).

8. CableLabs has already incurred significant expense preparing for and defending the three depositions taken by Rembrandt of three current or former CableLabs employees.

9. On April 1, 2009 Rembrandt served CableLabs with another subpoena (the "April 1st Subpoena"), seeking a deposition of CableLabs pursuant to Fed. R. Civ. P. 30(b)(6).

10. The April 1st Subpoena imposes a significant undue burden on non-party CableLabs by requiring CableLabs to testify regarding 23 separate topics, many with numerous subparts, in all totaling over 100 topics.

11. One of CableLabs' activities is to conduct testing to evaluate the compliance of cable equipment with the DOCSIS interface requirements as set forth in the specifications. During that testing, CableLabs does not necessarily learn *how* the cable equipment satisfies the specific requirement, but instead focuses only on *whether* the interface (e.g. inputs/outputs) satisfies the requirement. Other than as exposed on the discrete interface, *how* the products specifically implement the requirement is not known or tested by CableLabs. Design, implementation, and manufacturing decisions are up to the manufacturer; many different designs are typically possible to meet the requirements set forth in the specifications.

12. CableLabs is not involved in designing or developing equipment or systems used by the EVs or MSOs. Consequently, much of the information that Rembrandt seeks regarding the functionality of the EVs' products or the MSOs' systems is not within the knowledge of CableLabs.

13. For example, CableLabs does not have specific knowledge regarding the MSOs' and EVs' actual or projected costs of complying with the DOCSIS specifications. CableLabs does not specifically track data regarding costs of compliance with DOCSIS. Tracking the actual or projected costs of complying with DOCSIS is not within the job description of any CableLabs' employee. The costs associated with compliance with DOCSIS specification may be known to the EVs and MSOs, but are not specifically known to CableLabs. The EVs and MSOs are

parties to the underlying lawsuit, and therefore are the most appropriate source for that information.

14. Rembrandt itself, through Remstream, has submitted cable modems to CableLabs for DOSCIS Certification testing. The documentation that CableLabs required Rembrandt to produce as part of the DOCSIS certification process is typical of that usually required by CableLabs. The documents sent to Rembrandt as part of that certification process are also typical of those sent while conducting testing. Consequently, Rembrandt is already in possession of the documents that are the subject of topic 15.

15. Ms. Raymond was the in-house attorney at CableLabs in charge of licensing from December 1991 to January 2007, and still serves as outside counsel for CableLabs. Ms. Raymond is the most knowledgeable person on the Licensing Topics. Indeed, Ms. Raymond is the only person at CableLabs who is knowledgeable about many of the Licensing Topics. So, in almost all cases, if Ms. Raymond did not possess the information sought by Rembrandt, then there is no current corporate knowledge of such information.

16. As such, CableLabs is willing to designate Ms. Raymond's testimony for 30(b)(6) corporate purposes.

17. Preparing five witnesses to each testify, and then providing each of those five witnesses for full-day depositions will significantly disrupt CableLabs' business. The subpoena seeks information on a broad range of topics (many already covered in document production or testimony), and there is no single person who has knowledge to cover the entire subpoena.

18. Furthermore, much of the information requested in the April 1st Subpoena stems from activity over ten years old. No employees exist with first-hand knowledge of such information. As such, current employees with no knowledge of the prior activities would need to be educated on historical activity (to the extent such knowledge is even within the corporate memory of CableLabs) much of which is represented in documents already produced (e.g. licenses that speak for themselves).

I hereby state, under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge and ability.

Dated this 17th Day of April, 2009.

Judson D. Cary

fb.us.3891474.02