IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00691-WDM-KLM

IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Cable Television Laboratories, Inc.'s** <u>**Amended**</u> **Motion to Quash Rembrandt Technologies, LP's Subpoena or Alternatively for a Protective Order** [Docket No. 9; Filed April 6, 2009] (the "Motion") and its Memorandum in support of the Motion [Docket No. 10; Filed April 6, 2009] (the "Brief").  Rembrandt Technologies LP ("Rembrandt") filed a Response under seal on April 9, 2009 [Docket No. 16] and Cable Television Laboratories, Inc. ("Cable Labs") filed a Reply on April 17, 2009 [Docket No. 27].  The Motion has been fully briefed and is ripe for resolution.

IT IS HEREBY **ORDERED** that the Motion is **GRANTED in part and DENIED in part** as explained below.

## I.  BACKGROUND

Rembrandt is a litigant in a multi-district federal lawsuit pending in the District of Delaware.  Pursuant to that litigation, Rembrandt previously served four subpoenas for documents on nonparty CableLabs, which were eventually consolidated into a single subpoena requiring CableLabs to produce documents relating to fifty-one requests.  In response, CableLabs produced more than one hundred and eighty thousand pages of documents.  Rembrandt has also served three subpoenas for testimony on former or

1

current CableLabs employees, and has conducted the depositions of those individuals. *Motion* [#9] at 2-3.

Based on the parties' pleadings, it appears that there were multiple events which led to the present Motion. These events occurred over approximately twenty-eight weeks and involved not only extensive discovery efforts, but also extensive negotiations relating to discovery in the pending litigation. The arguments made by the parties regarding the Motion require a detailed and thorough review of these extensive pre-Motion events.

Moreover, neither the law nor the facts involved in the litigation is simple. Rembrandt alleges "infringement of multiple patents that are basic to technology used by the cable industry in the provision of cable modem service." *Response* [#16] at 1. The multi-district litigation involves claims by Rembrandt against "the six largest cable system operators in the country (multiple system operators, or 'MSOs'), as well as certain suppliers of equipment to the industry (equipment vendors, or 'EVs')." *Id.* According to Rembrandt, CableLabs "is a cable industry consortium founded, funded, and managed by" the six largest MSOs in the United States. *Id.* CableLabs is not a party to the multi-district litigation brought by Rembrandt, but allegedly has information critical to the lawsuit because it "drafted the industry-wide specification on which much of the infringing technology is based, compiled and licensed (other) patents related to that specification, and certifies cable equipment as compliant with that specification." *Id.*

According to CableLabs, it is a

non-party nonprofit research and development consortium dedicated to pursuing new cable television technologies and defining interfaces between cable networks and cable devices connected to the network. The discrete interface requirements are set forth in specifications. CableLabs facilitated the drafting of the Data Over Cable Service Interface Specification

("DOCSIS") specification.   Many entities provided input to the drafting process, including industry experts, other standard bodies, EVs and MSOs.

*Declaration of Judson D. Cary* [#27-2] at 2.

The timing of this Motion and its factual and legal complexity create a very difficult task for the Court.  The parties allege a lengthy history of multiple subpoenas, multiple document productions, multiple depositions, and extensive negotiations related to discovery.  They cite repeatedly to this substantial history in support of their arguments. They also cite to alleged discovery deadlines and the need for a quick ruling, despite the fact that this Motion was filed in this Court a mere *twenty-eight days* ago and was fully briefed just *two weeks* ago.  They ask the Court to review and digest seventy pages of argument and two hundred twenty-three pages of exhibits, including lengthy deposition excerpts.  They demand that the Court attempt to comprehend a complex industry (e.g., the subpoena's definitions of terms take up six and one-half pages), and that the Court issue its ruling within a very short time.  Indeed, Rembrandt has notified the Court more than once that it seeks expedited consideration of the Motion.  The reason for the request for expedited consideration is so that Rembrandt's experts may have the information sought in time to incorporate it into their expert reports, which are now apparently due May 27, 2009. *Motion to Expedite Reply and Consideration of Cable Television Laboratories' Amended Motion to Quash* [#21] at 2-3; *Notice* [#28] at 2.

Consideration of the issues involved in the Motion, in light of the complex procedural history and law involved, could reasonably take a judge with my caseload months to complete.  Obviously, development of the understanding and exercise of the judgment necessary to resolve a dispute like this one cannot be sacrificed simply because of the

parties' time constraints.  But the demand that I give *this* dispute expedited consideration necessitates the setting aside of other, equally important matters.  As a public servant upon whose services other litigants rely, it is no small matter to put aside the rest of my docket and turn my undivided attention to one particular matter.  Doing so is even more difficult – and less justified – when the matter for which priority consideration is sought involves unraveling an enormous knotted, twisted and matted ball of yarn, like the one which the parties to this dispute have placed before me.  My attempt to do so follows.

## II.  SUMMARY OF THE ARGUMENTS

In support of its Motion seeking to quash or significantly limit the outstanding Rule 30(b)(6) subpoena served upon it by Rembrandt, CableLabs contends that the subpoena is unduly broad and unduly burdensome, duplicative of previous deposition testimony obtained from CableLabs' agents, and seeks information that could be obtained from other sources. *Brief* [#10] at 5-13; *Reply* [#27] at 5-10.  Specifically, Rembrandt's April 1, 2009 subpoena [Docket No. 10-2] includes twenty-three different topics with more than 100 subparts.  According to CableLabs, at least eleven of those topics have been addressed by the testimony of CableLabs' employees or agents who have already been deposed by Rembrandt, or would be more appropriately addressed by the parties to the underlying litigation (Nos. 2, 3, 4, 6, 8a, 8b, 9, 10, 11, 18, 22 and 23).  CableLabs further asserts that Rembrandt already has sufficient personal knowledge regarding at least one of those topics (No. 15), and that Rembrandt has already received extensive document discovery regarding the remaining topics (Nos. 1, 5, 7, 8b, 12, 13, 14, 16, 17, 19, 20 & 21).  Of the twenty-three total topics, CableLabs contends that twelve should be deleted and the remaining should be limited significantly.

4

For its part, Rembrandt contends that its deposition of Dorothy Raymond, (CableLabs' former general counsel and current outside counsel), as a fact witness does not preclude a later Rule 30(b)(6) corporate deposition.  Further, Rembrandt asserts that Ms. Raymond did not testify adequately with respect to several topics included in the Rule 30(b)(6) notice, and that it has offered to revise the subpoena to reflect ten targeted inquiries "specifically based on the shortcomings of Ms. Raymond's testimony." *Response* [#16] at 12.  Rembrandt asserts that its narrowed subpoena is reasonable and not unduly burdensome, and points to alleged inadequacies in Ms. Raymond's previous testimony. *Id.* at 13-18.  Rembrandt asserts that CableLabs is reneging on an agreement to provide witnesses to testify about certain topics not within Ms. Raymond's purview (the "Non-Raymond Topics"), and attempts to explain the history of the parties' negotiations and compromises regarding these topics. *Id.* at 19-23.  Finally, Rembrandt argues that it should not be limited to seven hours to depose the five witnesses whom CableLabs has indicated it would need to designate to testify in response to the Rule 30(b)(6) deposition notice. Rembrandt takes the position that it is permitted to conduct a seven-hour deposition of each of CableLabs' designees based upon a comment contained in the Advisory Committee Notes to Fed. R. Civ. P. 30.  *Id.* at 23 (citing 2000 Advisory Committee Notes to Fed. R. Civ. P. 30).

### III.  ANALYSIS

### A.  Applicable Law

While the standard for permissible discovery is purposely broad, it is not without limitation.  *See* Fed. R. Civ. P. 26(c).  The Court may prohibit discovery "to protect a party or any person from annoyance, embarrassment, oppression, or undue burden or expense."

Fed. R. Civ. P. 26(c)(1).  Further, discovery which is duplicative or unduly burdensome should not be permitted. *See id.* 26(b)(2)(C); *see also SEC v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2008 WL 4087240, at *3 (D. Colo. Oct. 19, 2008) (unpublished decision).  I am also obligated to prohibit discovery which will subject the producing party to undue financial expense.  *See* 1993 Advisory Committee Notes to Fed. R. Civ. P. 30(a)(2)(A) (recognizing that counsel have a professional responsibility to pursue discovery in a cost-effective way). Moreover, Fed. R. Civ. P. 45(c)(1) requires that "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Therefore, I must limit discovery where the burden or expense "outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(iii).

CableLabs, as the objecting party, has the burden of showing that the discovery requested is objectionable. *Klesch & Co. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003).  If the objecting party claims that a subpoena is unduly burdensome, the alleged burden must usually be established "by affidavit or other reliable evidence."  *Hertz v. Luzenac Am., Inc.,* No. 04-cv-1961-LTB-CBS, 2006 WL 994431, at *12 (D. Colo. Apr. 13, 2006) (unpublished decision) (citing *Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind. 1992)).

### B.  The "Proof" Offered by CableLabs

In support of its contention that the discovery at issue is unduly burdensome, CableLabs offers general background statements, statements relating to its previous efforts to provide information to Rembrandt, and statements relating to the anticipated effort of providing additional information to Rembrandt.  These statements are summarized below:

**(1)     CableLabs' General Background Statements:**

- CableLabs does not design, manufacture or modify any cable modems or other equipment in response to different versions of DOCSIS, nor does it design or develop the MSOs' systems which use those cable modems and equipment ([# 27] at 8);

- CableLabs is not involved in the design, development or manufacture of any cable equipment or the provision of any high-speed data or voice-over IP services ([#27-2] at 3); and

- The DOCSIS specification is publicly available ([#27] at 10).

**(2)      CableLabs' Statements Relating to Its Previous Efforts to Provide Information to Rembrandt:**

- CableLabs has already produced more than 180,000 pages of documents to Rembrandt;

- CableLabs, at "significant" expense, coordinated, prepared and provided legal representation for three individuals who were deposed in response to subpoenas *ad testificandum* served by Rembrandt ([#10] at 6; [#27-2] at 2);

- Rembrandt has already deposed the person most knowledgeable about CableLabs' licensing practices (Ms. Raymond) and CableLabs has agreed to be bound (as a corporation) by her testimony ([#27] at 2);

- Rembrandt did not provide notice of the Rule 30(b)(6) deposition topics until after Ms. Raymond's deposition, thus depriving CableLabs of any opportunity to seek to combine the two depositions or otherwise minimize its costs ([#27] at 2-3); and

- CableLabs has already produced documentation regarding its testing of cable modems, and the equipment vendor Defendants in the lawsuit should also possess these documents ([#27] at 8).

**(3)      CableLabs' Statements Relating to Its Anticipated Effort of Providing Additional Information to Rembrandt:**

- The subpoena at issue seeks a Rule 30(b)(6) deposition of CableLabs on 23 topics with more than 100 subparts;

- The subpoena at issue contains topics which are duplicative of the deposition testimony Rembrandt already obtained during the individual depositions ([#10-9] at 2), and it would be "quite expensive and burdensome for CableLabs to once again prepare Ms. Raymond and offer her testimony on

those topics" ([#10] at 8);

- The subpoena at issue contains topics that "seek information that is outside of CableLabs' possession, custody or control and that is more easily and appropriately obtainable from parties in the action" ([#10] at 8 and [#10-9] at 3);

- The subpoena at issue "would require CableLabs to review tens of thousands of pages of documents and identify and prepare [at least five separate] witnesses," preparing five witnesses to testify and providing them for full-day depositions "will significantly disrupt CableLabs' business . . . [and] there is no single person who has knowledge to cover the entire subpoena" ([#10] at 7, 9; [#27-2] at 4);

- Rembrandt can obtain information about the terms of CableLabs' licenses from the actual license agreements, which Rembrandt already possesses ([#27] at 6);

- "[I]t would take a significant effort to prepare . . . a witness" to testify about the specific terms of CableLabs' licenses as such a witness would have to memorize the licenses ([#27] at 6);

- Rembrandt's proposal to have CableLabs identify the specific documents that are responsive to each subpoena topic and to provide a witness who can answer any specific questions necessary to understand the documents and how they are responsive to the deposition topics requires CableLabs to do two things instead of one, thus creating more burden and expense; i.e., to identify relevant documents *and* produce a witness to testify about them ([#27] at 7);

- Rembrandt is in the process of obtaining testimony from each of the Defendants regarding the DOCSIS specification and the actual functionality of the allegedly infringing products and services, thus the majority of the testimony sought from CableLabs is more easily and appropriately obtainable from the Defendants in this case ([#27] at 10); and

- "[M]uch of the information requested in the April 1st subpoena stems from activity over ten years old.  No [CableLabs] employees exist with first-hand knowledge of such information.  As such, current employees with no knowledge of the prior activities would need to be educated on historical activity (to the extent such knowledge is even within the corporate memory of CableLabs) much of which is represented in documents already produced" ([#27-2] at 5).

## C. The "Proof" Offered by Rembrandt

8

In support of its contention that the subpoena at issue is not unduly burdensome, Rembrandt offers the following general background statements, statements relating to CableLabs' previous efforts to provide information to Rembrandt, statements relating to Rembrandt's attempts to unburden CableLabs, and statements relating to Rembrandt's need for more information:

**(1)   Rembrandt's General Background Statements:**

- "Information in the possession of CableLabs . . . is uniquely available from CableLabs" ([#16] at 1);

- CableLabs "exist[s] at the pleasure of member company MSOs" ([#16] at 3);

- CableLabs "certifies under DOCSIS all of the cable modems and related equipment that Rembrandt accuses of infringing its patents [and] [t]hose certification decisions are made by a Certification Board comprised of representatives from the MSOs" ([#16] at 3); and

- "CableLabs and at least some of the MSOs and EVs have entered into a joint defense agreement related to the [multi-district litigation], and counsel for the EVs and at least one of the MSOs have been involved in the preparation of CableLabs' witnesses" ([#16] at 3).

**(2)   Rembrandt's Statements Relating to CableLabs' Previous Efforts to Provide Information to Rembrandt:**

- Prior to her deposition, CableLabs did not advise Rembrandt that it might designate Ms. Raymond as a Rule 30(b)(6) deponent on any topic ([#16] at 4-5);

- "Ms. Raymond had not been prepared or designated as a Rule 30(b)(6) witness, did not testify regarding most of the aspects of Topics 2-4 and 9-11 [in the subpoena at issue], and did not know or could not remember the answers to numerous questions within the scope of those topics" ([#16] at 6);

- Any burden imposed upon CableLabs previously to prepare Ms. Raymond for her deposition was voluntarily undertaken, as Rembrandt subpoenaed Ms. Raymond in her individual capacity and CableLabs chose to defend that deposition at its expense ([#16] at 19); and

- "During the parties' weeks of negotiations [relating to the subpoena],

CableLabs consistently agreed to provide witnesses for the Non-Raymond Topics . . . .   However, CableLabs inexplicably withdrew that agreement and instead (prematurely) filed a motion to quash . . . before the parties finished meeting and conferring . . . .   [Then CableLabs asserted that it did] not intend to offer deponents on *any topics* until [the parties'] differences [were] resolved by the Court" ([#16] at 7 (emphasis in original)).

**(3)     Rembrandt's Statements Relating to Its Attempts to Unburden CableLabs:**

• Rembrandt has made "significant accommodations" on the Raymond Topics addressed in the subpoena by offering to "treat Ms. Raymond's testimony as CableLabs' Rule 30(b)(6) testimony on matters for which she was able to provide testimony," dropping topics 2, 10 and 11 and identifying "ten targeted inquiries in lieu of Topics 3, 4 and 9" ([#16] at 9);

• "Rembrandt has also identified specific documents produced *after* Ms. Raymond's deposition about which it would like CableLabs to testify and which are plainly within the scope of the noticed topics . . . [and] Rembrandt does not insist on deposing Ms. Raymond in particular, but simply wants *any* CableLabs witness who is properly prepared by CableLabs to testify on the noticed topics" ([#16] at 12 (emphasis in original)); and

• CableLabs is attempting to "hold hostage the remaining [Non-Raymond] deposition topics, which are reasonable" ([#16] at 19).   Rembrandt has offered to compromise on the Non-Raymond Topics.  Rembrandt will accept documents as responsive to topics 5, 7, 8b, 12, 14, 17 and 21 *if* CableLabs identifies the documents that are responsive to each topic and provides a witness to authenticate them "and answer any specific questions necessary to understand them and how they are responsive to the deposition topics" ([#16] at 21).

**(4)     Rembrandt's Statements Relating to Its Need for More Information:**

• "Rembrandt seeks CableLabs' Rule 30(b)(6) testimony on topics about which *no one* has testified adequately, including Ms. Raymond . . . [and] Rembrandt devised its ten targeted inquiries . . . about which it now seeks testimony specifically based on the shortcomings of Ms. Raymond's testimony" ([#16] at 11-12 (emphasis in original));

• With respect to the ten targeted inquiries, Rembrandt seeks information about CableLabs' licensing practices, including licenses produced after Ms. Raymond's deposition.  The information sought includes the royalty terms of the licenses ("rate," "base" and "structure"), whether the licenses remain valid, the duration of the licenses, whether the licenses were exclusive, which

10

companies refused to pay for a sublicense, how much has been paid in royalties, how many patents were licensed, if there are other licenses with a particular licensee, any limitations on the scope of the licenses, any alternatives to any of these terms that were considered, and any discussions or negotiations with any parties regarding those issues ([#16] at 16-17). Rembrandt also seeks information about communications between CableLabs and A T & T regarding a license agreement which was produced after Ms. Raymond's deposition ([#16] at 17-18). Finally, Rembrandt seeks information related to the DOCSIS patent pool that is relevant to industry licensing practices and was not addressed by Ms. Raymond in her deposition ([#16] at 18);

• The remaining Non-Raymond Topics [1, 13, 16, 19 and 20] "are not conducive to testimony through documents alone because of the nature of the topics and Rembrandt's need to examine a witness generally about the topics" ([#16] at 22);

• Rembrandt seeks "CableLabs' understanding of the actual and projected costs of complying with the DOCSIS specifications . . . . CableLabs is uniquely positioned to testify regarding [these costs because it is] the author and developer of the DOCSIS specification and the body that certifies modems and related equipment" ([#16] at 22);

• Rembrandt seeks testimony regarding "typical documentation involved in DOCSIS testing." Despite Rembrandt's subsidiary's provision of CableLabs' contractual documents to Rembrandt, "Rembrandt does not know what is typical for CableLabs, nor does it know what documentation was required in the past" ([#16] at 23); and

• Seven hours of deposition testimony for five witnesses "is too short given the importance of CableLabs' testimony and its central role in this case" ([#16] at 23-24).

### D. Propriety of Quashing the Subpoena in Its Entirety

CableLabs requests that the Court quash the subpoena in its entirety for the reasons set forth above. CableLabs has failed to sustain its substantial burden of demonstrating that the subpoena, as a whole, is unduly burdensome. *See Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005); *Land v. United Tel. SE, Inc.*, No. 95-MC-0220-KHV, 1995 WL 128500, at **5-6 (D. Kan. Mar. 22, 1995) (unpublished decision). Accordingly,

the Court examines the propriety of discovery on each topic set forth in the subpoena.

## E.  Propriety of Discovery on Each Subpoena Topic

**Topic 1** seeks "communications between CableLabs and [certain MSOs] regarding the type of service, features, or functionality desired in cable modems and CMTS devices." *Subpoena* [#10-2] at 9.   CableLabs asserts that it has produced extensive documents on this subject.   *Brief* [#10] at 15.   Rembrandt asserts that this topic is "not conducive to testimony through documents alone because of the nature of the topic[] and Rembrandt's need to examine a witness generally about the topic[]."  *Response* [#16] at 22.  Rembrandt apparently does not dispute that CableLabs has produced some documents relating to this topic.   Because the topic requests information about communications between CableLabs and certain MSOs who are Defendants in the litigation, the Court finds that Rembrandt could obtain this information from those Defendants as well.   Given the facts that CableLabs has already produced some documents on this subject and that Rembrandt could obtain this information from the parties to the litigation, the Court will not permit further discovery by Rembrandt of CableLabs on Topic 1.

**Topic 2** seeks CableLabs' "understanding of any patents granted, provided, or licensed to [CableLabs] relating to DOCSIS." *Subpoena* [#10-2] at 9. CableLabs asserts that Ms. Raymond has already testified extensively on this topic.  *Brief* [#10] at 9-10. Rembrandt asserts that it has "dropped" this topic.  *Response* [#16] at 9.  Accordingly, further discovery on this topic is moot.

**Topic 3** seeks "any of [CableLabs'] licenses or agreements pertaining to intellectual property, including the licenses themselves and their terms."  *Subpoena* [#10-2] at 9.

CableLabs asserts that Ms. Raymond has already testified extensively on this topic.  In the alternative, CableLabs asserts that it should be permitted to designate portions of Ms. Raymond's testimony in satisfaction of its obligations regarding this topic.  *Brief* [#10] at 9-11.  CableLabs generally asserts that preparing a witness to testify on this topic would be unduly burdensome for a number of reasons.  CableLabs does not identify the appropriate witness, explain how preparation of the witness would disrupt its business, or specify the expense involved in preparing the witness either in terms of dollars or manhours.  *Declaration of Judson D. Cary* [# 27-2] at 3-5.  Rembrandt indicates that it has "identified ten targeted inquiries in lieu of" this topic and two others.  Included in the ten targeted inquiries are subjects about which Ms. Raymond clearly did not testify, e.g., any license or sublicense produced by CableLabs after Ms. Raymond's deposition.  *Response* [#16] at 14.  The Court finds that the first six of ten targeted inquiries are a reasonable compromise regarding original subpoena Topic 3, and that CableLabs' general assertions of expense and business disruption in responding to this topic fail to sustain its burden of showing undue burden.  Accordingly, the Court will permit further discovery by Rembrandt of CableLabs on Topic 3, as modified by targeted inquiries 1, 2, 3, 4, 5, and 6.

**Topic 4** seeks "communications between [CableLabs] and AT&T Broadband, AT&T, or AT&T, Inc. regarding licensing patents related to DOCSIS."  *Subpoena* [#10-2] at 9. CableLabs asserts that it "does not have anyone knowledgeable regarding any communications which are more than ten years old," and that all documents regarding such communications have already been produced.  According to CableLabs, preparing a witness on this subject would involve searching through the documents so the witness could restate their contents, and "Rembrandt can read through the documents as easily as

CableLabs." *Brief* [#10] at 14.  Rembrandt contends that targeted inquiry 7 (narrowing the inquiry to communications relating to licensing patents and interoperability issues related to DOCSIS) supercedes Topic 4, that Ms. Raymond's testimony on this issue was insufficient, that Rembrandt needs the information to combat estoppel and laches defenses asserted by some MSOs, that CableLabs' assertion that it does not have anyone knowledgeable about communications more than ten years old is "nothing but speculation," and that CableLabs must conduct a reasonable inquiry to determine whether it has knowledge of any AT & T communications. *Response* [#16] at 17-18.  The Court finds that there is no basis for concluding that CableLabs' representation regarding its lack of knowledge about decade-old documents was made without reasonable inquiry, in light of the extensive discovery already produced by CableLabs in this litigation and the affidavit of Mr. Cary, CableLabs' Vice President [of] Video Technology Policy and Deputy General Counsel. *Declaration of Judson D. Cary* [#27-2] at 1, 4-5.  Moreover, the obvious alternate source of the information requested in this topic are the AT&T entities.  Accordingly, the Court will not permit further discovery of CableLabs by Rembrandt on Topic 4.

**Topic 5** seeks "any membership fees, capital infusions, or other contributions made to [CableLabs] by each of the MSO Defendants, and the basis or bases on which such contributions were calculated." *Subpoena* [#10-2] at 9.  CableLabs asserts that Rembrandt has already received extensive document discovery on this topic, and that it includes "thousands of communications . . . between CableLabs and each of the thirteen [D]efendants over the past fifteen years," which makes preparation of a witness to testify on the topic impossible.  *Brief* [#10] at 16.  Rembrandt indicates that it will "accept documents as responsive [to this topic] provided that CableLabs identifies [them] and

14

provides a witness who can authenticate the documents and answer any specific questions necessary to understand them and how they are responsive to the [topic]." *Response* [#16] at 21.  The Court notes that this information can be obtained from the Defendants to the lawsuit.  The Court finds that it would be unduly burdensome for CableLabs to prepare a witness to testify about this topic.  However, CableLabs must identify those documents which are responsive and must certify the authenticity of such documents or explain (in writing) its inability to do so.  No other inquiry on this topic will be permitted.

**Topic 6** seeks "the projected and actual costs associated with modifying the design of cable modems and CMTS devices and/or updating and modifying deployed cable modems and CMTS devices to be compliant with each successive version of DOCSIS." *Subpoena* [#10-2] at 9.  CableLabs asserts that this topic is more appropriately addressed to the Equipment Vendors "who actually designed and developed the cable modems and cable modem terminations systems (CMTSs), and the MSOs who designed their cable systems." *Brief* [#10] at 13.  CableLabs argues that Rembrandt has made no showing that CableLabs has information which the parties would not have, or that Rembrandt has been unable to obtain this information from the parties.  *Id.* at 13-14.  Rembrandt asserts that it only wants to know "CableLabs' understanding of the actual and projected costs of complying with the DOCSIS specifications." *Response* [#16] at 22.  Rembrandt offers no explanation of why non-party CableLabs' "understanding" of those costs is relevant to the subject matter of the litigation, especially in light of the apparently undisputed fact that it can obtain information about the *actual* and projected costs from the MSO and EV Defendants themselves.  Accordingly, the Court will not permit further discovery of CableLabs by Rembrandt on Topic 6.

**Topic 7** seeks "the existence, identity, content, and interpretation of documents sufficient to show the budget(s) and actual costs associated with the development of DOCSIS and or modifying or revising cable modems, CMTS devices, and other equipment in response to each successive version of DOCSIS." *Subpoena* [#10-2] at 9.  CableLabs asserts that it has provided extensive document discovery on this topic.  Rembrandt states that it is willing to accept documents in response to this inquiry, on the conditions explained with respect to Topic 5 above. The Court notes that some of this information can be obtained from the Defendants to the lawsuit.  The Court finds that it would be unduly burdensome for CableLabs to prepare a witness to testify about this topic.  However, CableLabs must identify those documents which are responsive and must certify the authenticity of such documents or explain (in writing) its inability to do so.  No further inquiry on this topic will be permitted.

**Topic 8a** seeks information and documents about costs associated with "researching, developing, implementing, and selling each version of DOCSIS Compliant Devices." **Topic 8b** seeks information and documents about "costs charged by CableLabs to test and certify whether cable modems are DOCSIS compliant" and CableLabs' actual costs for doing so since 1999.  **Topic 8c** seeks information and documents about "charging, modifying or updating cable modems, CMTS devices and other equipment in response to each successive version of DOCSIS" since 1994. *Subpoena* [#10-2] at 9-10. CableLabs asserts that Topics 8a and 8c are more appropriately addressed to the EVs and MSOs, as set forth in regard to Topic 6 above.  CableLabs further asserts that Topic 8b has been addressed by the previous document discovery. *Brief* [#10] at 13-15.  Rembrandt

asserts that it merely seeks CableLabs' "understanding" of the costs set forth in topics 8a and 8c, and that it will accept documents in response to 8b, with the conditions previously outlined about accompanying testimony.  *Response* [#16] at 21.  The Court finds that the relevance of CableLabs' "understanding" of the costs associated with the issues addressed in Topics 8a and 8c is so marginal as to minimize the burden that should be imposed on CableLabs to respond.  CableLabs' document production in regards to Topics 8a and 8c suffices.   Moreover, the information sought can be obtained from the Defendants. Accordingly, no further inquiry will be permitted on Topics 8a and 8c.  With regard to 8b, CableLabs shall identify the documents that are responsive and certify the authenticity of those documents or explain (in writing) its inability to do so.

**Topic 9** seeks extensive information about the DOCSIS Patent Pool.  *Subpoena* [#10-2] at 10.  CableLabs contends that Ms. Raymond is the person most knowledgeable about this topic and that she addressed it extensively at her deposition.  In the alternative, CableLabs asserts that it should be permitted to designate portions of Ms. Raymond's testimony in satisfaction of its obligations regarding this topic.   *Brief* [#10] at 9-11. Rembrandt states that targeted inquiries 8 through 10 replace Topic 9, and are limited to subjects that Ms. Raymond did not address in her deposition. The Court finds that targeted inquiries 8, 9 and 10 are a reasonable compromise about unexplored issues relating to the DOCSIS Patent Pool, and will permit further discovery of CableLabs by Rembrandt on this topic, as modified by targeted inquiries 8, 9 and 10.

**Topic 10** seeks information about the DOCSIS License Agreement.  *Subpoena* [#10-2] at 10-11.   CableLabs contends that Ms. Raymond is the person most

knowledgeable about this topic and that she addressed it extensively at her deposition.  In the alternative, CableLabs asserts that it should be permitted to designate portions of Ms. Raymond's testimony in satisfaction of its obligations regarding this topic.  *Brief* [#10] at 9-11.  Rembrandt states that it has dropped this topic.  *Response* [#16] at 9.  Accordingly, the Court finds that discovery on this topic is moot.

**Topic 11** seeks information about the instructions for the DOCSIS License Agreement.  *Subpoena* [#10-2] at 11.  CableLabs contends that Ms. Raymond is the person most knowledgeable about this topic and that she addressed it extensively at her deposition.  In the alternative, CableLabs asserts that it should be permitted to designate portions of Ms. Raymond's testimony in satisfaction of its obligations regarding this topic. *Brief* [#10] at 9-11.  Rembrandt states that it has dropped this topic.  *Response* [#16] at 9. Accordingly, the Court finds that discovery on this topic is moot.

**Topic 12** seeks information about "the creation of the DOCSIS Specifications." *Subpoena* [#10-2] at 11.   CableLabs contends that it has produced extensive documentation on this subject.  *Brief* [#10] at 15.  Rembrandt asserts that it will accept documents in response to this topic, on the conditions set forth above regarding Topic 5. *Response* [#16] at 21-22.  In light of the extensive document production by CableLabs, the Court finds that it would be unduly burdensome for CableLabs to prepare a witness to testify about this topic.  However, CableLabs must identify those documents which are responsive and must certify the authenticity of such documents or explain (in writing) its inability to do so.  No additional inquiry on this topic will be permitted.

**Topic 13** seeks information about CableLabs' testing of modems and CMTS

devices.  *Subpoena* [#10-2] at 11-12.  CableLabs asserts that it has produced extensive documents on this subject.  *Brief* [#10] at 15.  Rembrandt asserts that this topic is "not conducive to testimony through documents alone because of the nature of the topic[] and Rembrandt's need to examine a witness generally about the topic[]."  *Response* [#16] at 22.  Rembrandt apparently does not dispute that CableLabs has produced some documents relating to this topic.  CableLabs admits that it conducts "testing to evaluate the compliance of cable equipment with the DOCSIS interface requirements as set forth in the specifications."  *Declaration of Judson D. Cary* [#27-2] at 3.  CableLabs further avers that Rembrandt already possesses the typical documentation produced while conducting the testing, as requested in Topic 15.  *Id.* at 4.  However, CableLabs has failed to show that the documents already produced fully address this topic, or that it would be unduly burdensome to prepare a witness to testify about this topic.  Accordingly, the Court will permit further discovery of CableLabs by Rembrandt regarding Topic 13.

**Topic 14** seeks "identification of all cable modems and CMTS devices by manufacturer or vendor . . . submitted by Defendants, used by Defendants, or submitted by Defendants' suppliers, vendors, or manufacturers that CableLabs tested" and information about certification dates on such equipment.  *Subpoena* [#10-2] at 12. CableLabs contends that it has produced extensive documentation on this subject.  *Brief* [#10] at 15.  Rembrandt asserts that it will accept documents in response to this topic, on the conditions set forth above regarding Topic 5.  *Response* [#16] at 21-22.  In light of the extensive document production by CableLabs, the Court finds that it would be unduly burdensome for CableLabs to prepare a witness to testify about this topic.  However, CableLabs must identify those documents which are responsive and must certify the

authenticity of such documents or explain (in writing) its inability to do so.  No additional inquiry on this topic will be permitted.

**Topic 15** seeks "typical documentation produced or received by CableLabs while conducting the testing."  *Subpoena* [#10-2] at 12.  CableLabs asserts that Rembrandt already has "personal knowledge" of this information and the documents relating to it through its subsidiary's participation in the DOCSIS Patent Pool.  *Brief* [#10] at 14-15; *Declaration of Judson D. Cary* [#27-2] at 4.  Rembrandt asserts that it "does not know what is typical for CableLabs, nor does it know what documentation was required in the past." *Response* [#16] at 23.  However, the topic makes no mention of information sought regarding "the past," and CableLabs has now verified that the documents sent to Rembrandt "through Remstream" are typical.  *Declaration of Judson D. Cary* [#27-2] at 4. Accordingly, no further discovery of CableLabs by Rembrandt on this topic will be permitted.

**Topic 16** seeks information regarding the "development of the DOCSIS specifications."  *Subpoena* [#10-2] at 12-13.  CableLabs contends that it has already produced extensive documentation regarding this topic. *Brief* [#10] at 15.  Rembrandt does not deny that it has received documents relating to this topic.  However, Rembrandt contends that this topic "is not conducive to testimony through documents alone because of the nature of the topic and Rembrandt's need to examine a witness generally about the topic." *Response* [#16] at 22.  The information sought in this topic is only likely to be gained through testimony, as it relates to "the reasons for developing each version of DOCSIS, the factors considered when deciding to develop each version . . . [and] the reasons for

selecting certain specifications," among other issues.  The Court finds that CableLabs has not sustained its burden of showing that providing a witness to testify to this topic would be unduly burdensome.   Accordingly, the Court will permit discovery of CableLabs by Rembrandt as to Topic 16.

**Topic 17** seeks information and documents about "the number of employees at CableLabs working on DOCSIS each year from 1999 to the present."  *Subpoena* [#10-2] at 13.  CableLabs contends that it has produced extensive documentation on this subject. *Brief* [#10] at 15.  Rembrandt asserts that it will accept documents in response to this topic, on the conditions set forth above regarding Topic 5.  *Response* [#16] at 21-22.  In light of the extensive document production by CableLabs, the Court finds that it would be unduly burdensome for CableLabs to prepare a witness to testify about this topic.   However, CableLabs must identify those documents which are responsive and must certify the authenticity of such documents or explain (in writing) its inability to do so.  No additional inquiry on this topic will be permitted.

**Topic 18** seeks "CableLabs' estimates or actual data related to upstream and downstream bandwidth constraints for MSOs . . . ."  *Subpoena* [#10-2] at 13.  CableLabs contends that it while "may have some general knowledge . . . [about the] functionality of the MSOs systems," this topic is more appropriately directed to the Equipment Vendors "who actually designed and developed the cable modems and cable modem terminations systems (CMTSs), and the MSOs who designed their cable systems."  *Brief* [#10] at 13. CableLabs argues that Rembrandt has made no showing that it has information which the parties would not have, or that Rembrandt has been unable to obtain this information from

the parties.  *Id.* at 13-14.  Rembrandt asserts that it only wants to know "CableLabs' understanding of the actual and projected costs of complying with the DOCSIS specifications."  *Response* [#16] at 22.  Rembrandt provides no explanation regarding why non-party CableLabs' "understanding" of those costs is relevant to the subject matter of the litigation, especially in light of the apparently undisputed fact that it can obtain information about the *actual* and projected costs from the MSO and EV Defendants themselves. Moreover, Rembrandt provides no explanation of what its desire to know about "costs" has to do with the "data" requested here.   Accordingly, the Court will not permit further discovery of CableLabs by Rembrandt on Topic 18.

**Topic 19** seeks "all communications and meetings between or among CableLabs' employees, engineers, representatives, or contractors, and representatives of the Defendants regarding" certain sections, figures and tables of the DOCSIS specifications. **Topic 20** seeks "the author, origin, drafting and revision" of those sections, figures and tables.  *Subpoena* [#10-2] at 14. CableLabs contends that it has already produced extensive documentation regarding these topics. *Brief* [#10] at 15.  Rembrandt apparently does not deny that it has received documents related to these topics.  However, Rembrandt contends that these topics are "not conducive to testimony through documents alone." *Response* [#16] at 22.  Rembrandt fails to address why it should not seek the information sought in Topic 19 from the Defendants.   In light of CableLabs' extensive document production and the fact that Rembrandt may obtain some of this information through the Defendants, the Court will not permit further discovery of CableLabs by Rembrandt on this topic.

**Topic 21** seeks "what sections, figures and tables listed in Topic 19 a cable modem or CMTS device must comply with in order to be certified or qualified by CableLabs." *Subpoena* [#10-2] at 14.   CableLabs contends that it has produced extensive documentation on this subject.   *Brief* [#10] at 15.   Rembrandt asserts that it will accept documents in response to this topic, on the conditions set forth above regarding Topic 5. *Response* [#16] at 21-22.   In light of the extensive document production by CableLabs, the Court finds that it would be unduly burdensome for CableLabs to prepare a witness to testify about this topic.   However, CableLabs must identify those documents which are responsive and must certify the authenticity of such documents or explain (in writing) its inability to do so.   No additional inquiry on this topic will be permitted.

**Topics 22 and 23** seek extensive information about CableLabs' "knowledge and understanding" of how each cable modem or CMTS device tested by CableLabs works, including information relating to the modems' software, memory usage, registration with a CMTS device, message processing, generation and receipt, "coefficients," "equalizers," "convolution algorithm," "taps," "format of the Physical Media Dependent frame, "adding or prepending a preamble to the PMD frame," and "configuration of upstream channels." *Subpoena* [#10-2] at 16-17.   CableLabs contends that although it "may have some general knowledge . . . [about the] functionality of cable modems and CMTSs," this topic is more appropriately directed to the Equipment Vendors "who actually designed and developed the cable modems and cable modem terminations systems (CMTSs), and the MSOs who designed their cable systems."   *Brief* [#10] at 13.   CableLabs argues that Rembrandt has made no showing that CableLabs has information which the parties would not have, or that

Rembrandt has been unable to obtain this information from the parties.  *Id.* at 13-14.

Rembrandt asserts that it only wants to know "CableLabs' understanding of the actual and

projected costs of complying with the DOCSIS specifications."  *Response* [#16] at 22.

Rembrandt further asserts that it offered to narrow these topics to "groups of modems" and

that CableLabs "need only testify about the sub-topics about which it had knowledge."  *Id.*

at 22 n.10.    Rembrandt provides no explanation of why non-party CableLabs'

"understanding" of those "groups of modems" is relevant to the subject matter of the

litigation, especially in light of the apparently undisputed fact that it can obtain information

about the modems from the MSO and EV Defendants themselves.  Moreover, Rembrandt

fails to explain what its desire to know about "costs" has to do with the information

requested here.  Accordingly, the Court will not permit further discovery of CableLabs by

Rembrandt on Topics 22 and 23.

### F.  Length of Rule 30(b)(6) Deposition

CableLabs contends that the subpoena should be limited in scope such that "the

depositions necessitated by the subpoena [would take] no more than seven hours in total."

*Motion* [#9] at 4.  CableLabs reasons that "[i]f the April 1st subpoena is limited to a

reasonable scope, then seven hours of testimony should be ample." *Brief* [#10] at 18.

Rembrandt asserts that it should not be "confined to seven hours to depose five witnesses."

*Response* [#16] at 23.  Rembrandt cites to an Advisory Committee Note to Rule 30(d)(2)

for the proposition that the deposition of each person designated under Rule 30(b)(6)

should be considered a separate deposition, hence the length of the deposition is

expanded according to the number of corporate deponents designated.

I disagree.  The party who prepares the Rule 30(b)(6) notice has complete control

over the subject matter chosen for the corporate deposition.  The corporation being deposed has control over the number of deponents designated *only* to the extent of its organization of the corporate information sought in the deposition notice.  The organization of corporate information – who has it and how much each person has – is almost always established prior to the receipt of a Rule 30(b)(6) deposition notice.  Each Rule 30(b)(6) notice is different, of course, and a corporate deponent may find itself in the fortunate position of having to designate only a single deponent based on the types of information sought.  However, when multiple types and sources of information are sought in a Rule 30(b)(6) deposition, as is frequently the case, numerous deponents are regularly designated because the information sought is not within the knowledge or grasp of a single individual.  A blanket rule permitting a seven-hour deposition of each designated deponent is unfair (because it rewards broader deposition notices and penalizes corporate defendants who regularly maintain business information in silos and who therefore must either designate multiple individuals to respond or spend time, energy, money and other resources preparing a single individual to respond) and unduly burdensome (because of the manifest increased cost and disruption of preparing more than one person to respond to a deposition notice).

As discussed above, I have allowed Rembrandt to depose CableLabs as to targeted inquiries 1, 2, 3, 4, 5, 6, 8, 9 and 10 and subpoena topics 13 and 16.  Rembrandt is permitted no more than a total of ten (10) hours to address these subjects in a Rule 30(b)(6) deposition of CableLabs.  No single deposition day will exceed seven hours of testimony.  Further, Rembrandt shall inform CableLabs in writing no later than three business days before the deposition of the order in which the targeted inquiries and topics

25

above will be addressed, and Rembrandt shall follow that order in conducting the deposition.

## IV.  CONCLUSION

The Motion is **GRANTED in part and DENIED in part**, as set forth below:

(1)  The subpoena is quashed as to Topics 1, 4, 6, 8a, 8c, 15, 18, 19, 20, 22 and 23;

(2)  The subpoena is modified to require *only* identification of responsive documents and written certification of the authenticity of such documents or explanation of CableLabs' inability to authenticate documents responsive to Topics 5, 7, 8b, 12, 14, 17, and 21;

(3) The subpoena is modified to require full responses to targeted inquiries 1 through 6 in lieu of Topic 3 and targeted inquiries 8 through 10 in lieu of Topic 9;

(4) The subpoena is enforced according to its terms regarding Topics 13 and 16;

(5) The Motion is **denied as moot** with respect to Topics 2, 10, and 11 of the subpoena, which are deemed withdrawn; and

(6) Rembrandt shall be permitted to take CableLabs' Rule 30(b)(6) deposition in response to the subpoena for no more than ten (10) total hours.  No single deposition day will exceed seven hours of testimony.  Further, Rembrandt shall inform CableLabs in writing no later than three business days before the deposition of the order in which  targeted inquiries 1, 2, 3, 4, 5, 6, 8, 9 and 10 and topics 13 and 16 will be addressed, and Rembrandt shall follow that order in conducting the deposition.

Dated:  May 4, 2009

 s/ Kristen L. Mix
Kristen L. Mix

United States Magistrate Judge